**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Thompson, individually and as guardian of Gabriella Thompson, Matthew Thompson, Marcus Thompson, Michael Thompson; and the Thompson Group, P.C., an Arizona professional corporation, </br></br>Plaintiff, </br></br>vs. </br></br>George Paul and Karen Paul, husband and wife; Tom Morgan; Scott Dewald and Deborah Jamieson, husband and wife; Lewis and Roca, LLP, An Arizona limited liability partnership; and Capitol Detective Agency, Inc., an Arizona corporation, </br></br>Defendants. | No. CIV-05-0990-PHX-MHM </br></br>**ORDER** |

Currently, before the Court is Defendants Lewis and Roca, LLP's[1] Motion to Dismiss. (Dkt. #11). After reviewing the motion and hearing oral argument on October 20, 2005, the Court issues the following order.

**I.     Factual Background**

Pamela Thompson, resigned as Chief Financial Officer, Secretary, and Treasurer of YP.net in May, 2002. Compl. ¶17. Thompson's resignation was motivated by ethical and

---

[1] Defendants Lewis and Roca referred to collectively, also include Defendants George Paul, Karen Paul, Tom Morgan, Scott Dewald and Deborah Jamieson. Defendant Capitol Detective Agency did not join in the instant motion to dismiss.

1  professional concerns regarding accounting and disclosure practices of YP.net and Angelo
2  Tullo, Chief Executive Officer of YP.net. Id. Upon receiving Ms. Thompson's resignation,
3  YP.net, represented by the Lewis & Roca Defendants, sued Ms. Thompson and Ms.
4  Thompson countersued. Compl. ¶26. Plaintiffs maintain the Lewis and Roca Defendants
5  instituted this baseless litigation to harass Ms. Thompson and to prevent her from disclosing
6  information to law enforcement regarding the criminal investigation of Mr. Tullo. Compl.
7  ¶¶26-32.

8        On April 22, 2004, the parties entered settlement negotiations. Compl. ¶37. Plaintiffs
9  contend Ms. Thompson relied on the Lewis and Roca Defendants false representations when
10 accepting YP.net's settlement offer, comprising of YP.net's Common Stock. Compl. ¶38.
11 Specifically, Plaintiffs assert the Lewis and Roca Defendants falsely represented that there
12 was no criminal investigation targeted at Mr Tullo. Compl. ¶37. "Moments before the final
13 settlement documents" were executed, Lewis & Roca withdrew as counsel. Compl. ¶41.
14 As a result of the withdrawal of Lewis and Roca, settlement was finalized on May 24, 2004.
15 Compl. ¶42. Plaintiffs maintain due to Lewis and Roca's withdrawal and false
16 misrepresentation, Ms. Thompson was unable to sell her YP.net stock before the government
17 indicted Mr. Tullo, and consequently, the value of Ms. Thompson's settlement plummeted.
18 Compl. ¶¶44,45.

19       Plaintiffs filed their complaint on April 1, 2005 alleging claims for: 1) violation of
20 section 10(b) of the Securities and Exchange Act; 2) Abuse of Process; 3) Wrongful
21 Institution of Civil Proceedings; 4) Fraudulent Misrepresentation; 5) Negligent
22 Misrepresentation; 6) Third Party Professional Negligence; 7) Tortious Interference with
23 Contractual Relations; 8) Intentional Infliction of Emotional Distress; and 9) Negligent
24 Infliction of Emotional Distress. Compl. ¶¶46-131. Named as Defendants are Lewis and
25 Roca LLP, George Paul, Karen Paul, Tom Morgan, Scott Dewald and Deborah Jamieson
26 ("Lewis and Roca Defendants"). Compl. ¶¶6-10. Also named as a defendant is Capitol
27 Detective Agency, who did not join in the instant motion to dismiss. Id. at ¶11.
28 **II.**    **Legal Standard**

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997). Accordingly, the court will not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). However, "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001).

In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998). As such, an inquiry into the adequacy of the evidence is improper when deciding whether to dismiss for failure to state a claim. Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir. 1998).

**III.  Discussion**

    **A.  Fraudulent Misrepresentation, Negligent Misrepresentation, and Third Party Professional Negligence.  (Counts 1, 4, 5, and 6)**

A cause of action against opposing counsel for statements made during litigation is strictly limited to actions alleging malicious prosecution, also known as wrongful institution of civil proceedings. Linder v. Brown & Herrick, 943 P.2d 758, 766 (Ariz. Ct. App. 1997) (dismissing claims of fraud and intentional infliction of emotional distress against opposing counsel for failure to state a claim). An attorney's duty to a nonclient arises only if the nonclient is an "intended beneficiary" of the attorney's services. Wetherill v. Basham, 3 P.3d 1118, 1128, (Ariz. Ct. App. 2000). "[A]n adverse party is not an intended beneficiary of the adverse counsel's client." Lewis v. Swenson, 617 P.2d 69, 72 (Ariz. Ct. App. 1980) (internal quotation omitted). Imposition of a duty to an individual, other than an "intended beneficiary" would offend public policy by "plac[ing] an attorney in a position where his own interests would conflict directly with his client's interests." Id. Additionally, "as a

1 matter of law and common sense, [Ms. Thompson] had no right to rely on statements made
2 by the attorneys opposing [her]." Linder, 943 P.2d at 765.

3      A section 10(b) action requires justifiable reliance on alleged misrepresentations.
4 Atari Corp. v. Ernst & Whinney, 981 F.2d 1025 (9th Cir. 1992). The securities laws create
5 liability for misrepresentations only in the event of a "substantial likelihood that the
6 misrepresentation significantly altered the total mix of information that the investor
7 possesse[d]." Id. at 1030. "If the investor already possesses information sufficient to call
8 the representations into question, he cannot claim later that he relied on or was deceived by
9 the lie." Id. As noted above, Ms. Thompson had no right to rely on statements made by the
10 attorneys opposing [her]." Linder, 943 P.2d at 765.

11      Plaintiff's reliance on Paradigm Ins. Co. v. Langerman Law Offices, P.A., 24 P.3d 593
12 (Ariz. 2001), is unavailing under the facts presented here. While the Arizona Supreme Court
13 in Paradigm found a duty existed between an attorney and a nonclient, the nonclient, unlike
14 Plaintiff, was an intended beneficiary of the attorney's services. Id. at 602. As an adverse
15 party Plaintiff was not an intended beneficiary of Defendant's services, thus Defendants
16 owed no duty to Plaintiff. Accordingly, Plaintiff's have failed to state a claim for fraudulent
17 misrepresentation, negligent misrepresentation, and third party professional negligence.

18     **B.**    **Abuse of Process (Count 2)**

19      While Arizona courts recognize claims for abuse of process against opposing counsel,
20 Giles v. Hill Lewis Marce, 988 P.2d 142, 146 (Ariz. Ct. App. 1999), an actionable claim for
21 abuse of process requires both an ulterior purpose and a willful act in the use of judicial
22 process not proper in the regular conduct of the proceeding. Giles, 988 P.2d at 146; Joseph
23 v. Markovitz, 551 P.2d 571, 574-75 (Ariz. Ct. App. 1976). A "willful act" requires
24 something more than defendant's "carry[ing] out the process to its authorized conclusion,
25 even though with bad intentions." Joseph, 551 P.2d at 575 (internal quotation omitted). It
26 is "a form of extortion, and it is what is done in the course of negotiation, rather than the
27 issuance or any formal use of the process itself." Crackel v. Allstate Insurance Co., 92 P.3d
28 882, 890 (Ariz. Ct. App. 2004) (internal citations omitted). In Joseph, the plaintiff alleged

1 the complaint was filed to prevent his testimony against the defendants in a malpractice
2 action. Treating this allegation as true, the plaintiff would have had to allege an act beyond
3 the filing of the lawsuit, such as an offer to dismiss the complaint in exchange for plaintiff's
4 refusal to testify, to maintain a claim for abuse of process. Id. at 575.

5 Like Joseph, Plaintiff merely asserts that Defendant's purpose was to exhaust her
6 financial resources in order to prevent her testimony against Mr. Tullo, YP.net's CEO in a
7 pending criminal matter. (Compl. ¶ 56.)  Other than describing the Defendant's litigation
8 activities, Plaintiff does not allege a willful act in furtherance of this purpose. While not pled
9 in the complaint, Plaintiff has alleged that three unsuccessful contempt of court actions filed
10 in the YP.net litigation constitute an overt act.   Contempt actions constitute "a use of the
11 process itself" as opposed to something "done in the course of negotiation." See Green v.
12 Uccelli, 207 Cal. App.3d 1112, 11117, 1125 (1989) (filing orders to show cause regarding
13 contempt does not constitute a claim for abuse of process against opposing counsel).
14 Therefore, Plaintiff has failed to state a claim for abuse of process.

15 **C.     Wrongful Institution of Civil Proceedings (Count 3)**

16 An actionable claim for wrongful institution of civil proceedings, or malicious
17 prosecution, requires showings "that a civil or criminal proceeding was instituted by the
18 defendant against the plaintiff; that the suit terminated in favor of the plaintiff; that it was
19 commenced without probable cause; and that it was motivated by malice." Joseph, 551 P.2d
20 at 573.  "The existence of probable cause to institute the action is a complete defense to
21 malicious prosecution without regard to the existence of malice." Id.  "Conclusory
22 allegations with nothing more are insufficient to defeat [a] motion to dismiss. McCarthy v.
23 Mayo, 827 F.2d 1310, 1316 (9th Cir. 1987).

24 Beyond re-stating allegations in support of the claim for abuse of process (Compl. ¶
25 60-61), Plaintiff only alleges that, based upon available evidence, no reasonable person
26 would have believed Defendant's claim was meritorious. (Compl. ¶ 63). In addition, Plaintiff
27 offers no facts in support of the alleged absence of probable cause.  This allegation is
28

1 conclusory, and therefore, Plaintiff has failed to state a claim for wrongful institution of civil
2 proceedings.

### D. Tortious Interference with Contractual Relations and Business Expectancy (Count 7)

An actionable claim for tortious interference with contractual relations and business expectancy requires a valid contractual relationship or business expectancy, the interferer's knowledge of the contractual relationship or expectancy, intentional interference inducing a breach or termination of the relationship, and resultant damage. American Family Mutual Ins. Co. v. Zavala, 302 F. Supp. 2d 1108, 1117 (D. Ariz. 2003). Additionally, the interference must be "improper" in some manner. Id. The Restatement addresses the impropriety of truthful statements:

> There is of course no liability for interference with a contract . . . on the part of one who merely gives truthful information to another. The interference in this instance is clearly not improper. This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested.

Restatement (Second) of Torts §772 cmt. b (1979)

The complaint alleges that Defendants informed Plaintiff's clients that Plaintiff was being sued by YP.net. This was a true statement, and therefore, "[t]here is of course no liability for interference with a contract . . . on the part of one who merely gives truthful information to another." Id. Accordingly, it is unnecessary to analyze the remaining elements of the claim. Plaintiff has thus failed to state a claim for tortious interference.

### E. Intentional Infliction of Emotional Distress (Count 8)

A cause of action for intentional infliction of emotional distress requires that "the conduct by the defendant . . . be 'extreme' and 'outrageous;'" "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct;" and severe emotional distress must result from defendant's conduct." Johnson v. McDonald, 197 Ariz. 155, 160 (App. 1995). The trial court determines whether the acts at issue are sufficiently outrageous to state a claim for relief. However, if

- 6 -

1 reasonable minds could differ about whether the conduct is sufficiently outrageous, the issue
2 should be decided by a jury. Id..

3 Plaintiff alleges the Lewis and Roca Defendants stalked, harassed and assaulted Ms.
4 Thompson. Compl. ¶¶95-122. Specifically, Plaintiffs assert in April 2002 Defendant Paul
5 admitted to having Ms. Thompson and her children followed. Compl. ¶96. Plaintiffs also
6 allege a Lewis and Roca attorney called Ms. Thompson's children "tar babies." Compl.
7 ¶112. Additionally, Plaintiffs assert the Lewis and Roca Defendants hired individuals who
8 attacked Ms. Thompson at a restaurant named the Phoenix City Grill. Compl. ¶101.

9 In Linder, supra, the Arizona Court of Appeals upheld the dismissal of the plaintiff's
10 claims of fraud and intentional infliction of emotional distress against opposing counsel in
11 a previous action, finding the claims not only insufficiently pleaded, but precluded by an
12 earlier judgment. The court nevertheless went on to state that, in Arizona, case law limits
13 claims against opposing counsel to malicious prosecution. Linder, 943 P.2d at 765.
14 However, subsequent cases have limited Linder's holding to precluding claims against
15 opposing counsel alleging fraud and negligence. Cf. Giles v. Hill Lewis Marce, 988 P.2d
16 143, 146-47 (Ariz. Ct. App. 1999) (concluding public policy invoked in Linder does not
17 exist for abuse of process claims).

18 Reckless disregard has been found when an employer knew an employee had been
19 physically assaulted, subjected to "vulgar remarks," and was emotionally distraught. Ford
20 v. Revlon, Inc., 734 P.2d 580, 585 (Ariz. 1987). Although Plaintiff's claims against Lewis
21 & Roca do not arise in an employment context, her allegations are otherwise similar to Ford.

22 Defendants argue the allegations in the complaint, which rely only on "information
23 and belief," are insufficient to support Plaintiffs' allegations and, even if sufficient, fail to
24 state a claim for IIED. However, the Complaint specifies Defendant Paul told Ms.
25 Thompson she was being followed and a Lewis & Roca lawyer used a racial slur in reference
26 to Ms. Thompson's children. Further, Plaintiffs allege Ms. Thompson was assaulted, which
27 was witnessed by four individuals, whom Plaintiffs believe Defendants hired. Accordingly,
28 the allegations appear to be based on Ms. Thompson's personal knowledge and the Court is

- 7 -

1  unaware of authority to dismiss claims on a 12(b)(6) motion which are based on Plaintiffs'
2  personal knowledge.

3  Alternatively, Defendants argue, taking as true the allegations, they are insufficient
4  to support a claim for intentional infliction of emotional distress. Courts have concluded a
5  private investigator surreptitious videotaping an individual during church services "as a
6  matter of law . . . did not rise to the level of outrage necessary to support a claim for
7  intentional infliction of emotional distress." Creel v. I.C.E. & Associates, Inc., 771 N.E.2d
8  1276, 1282-83 (Ind. Ct. App. 2002). Furthermore, another jurisdiction has found use of a
9  racial epithet in conjunction with other offensive behavior did not state a claim for intentional
10 infliction of emotional distress under a standard requiring a plaintiff to plead she was
11 subjected to "relentless physical and verbal harassment. . . to state a claim for intentional
12 infliction of emotional distress." Vamper v. United Parcel Service, Inc., 14 F. Supp.2d 1301,
13 1306-07 (S.D. Fla. 1998) (dismissing Plaintiff's IIED claim where the plaintiff alleged that
14 UPS fabricated a reckless driving charge in an attempt to terminate him; told a false story
15 about him to another employee; and referred to plaintiff as a "nigger.")

16 However, Plaintiff's claims are distinguishable from an isolated incident of
17 videotaping. Furthermore, Arizona does not require proof of relentless physical and verbal
18 harassment to state a claim for intentional infliction of emotional distress. Here, Plaintiff
19 alleges Defendants repeatedly followed and "stalked" Ms. Thompson and Ms. Thompson's
20 children, used a racial slur in reference to Ms. Thompson's children, trespassed on Ms.
21 Thompson's property, terrorized Ms. Thompson's children, and hired individuals to assault
22 Ms. Thompson. The Court finds that reasonable minds could differ about whether the
23 alleged conduct is sufficiently outrageous, and therefore, dismissal is not appropriate.

24 **F.     Negligent Infliction of Emotional Distress (Count 9)**

25 A cause of action for negligent infliction of emotional distress requires that the "shock
26 or mental anguish is accompanied by or manifested as a physical injury." Gau v. Smitty's
27 Super Valu, Inc., 901 P.2d 455, 457 (Ariz. Ct. App. 1995). Teeth grinding and bed wetting
28 have been held sufficient physical injuries to state a cause of action, Quinn v. Turner, 745

1 P.2d 972, 973 (Ariz. Ct. App. 1987), whereas transitory weeping and insomnia, standing
2 alone, cannot sustain a cause of action for negligence. Gau, 901 P.2d at 457.

3 The complaint does not allege physical injury resulting from the emotional distress
4 Defendant's caused Plaintiff. Rather, this emotional distress was accompanied by
5 phenomena such as anxiety, fear concerning and overwhelming feelings, insomnia, and
6 weight loss. Compl. ¶¶129-30. While Plaintiffs allege Matthew Thompson was rushed to the
7 emergency room due to his anxiety, Plaintiff fails to allege what manifested physical injury
8 precipitated the hospital visit, the result or duration of the hospital visit. Compl. ¶103.
9 Feelings, emotions, and insomnia are insufficient to state a cause of action for negligence.
10 While weight loss is arguably a physical injury, it is likely transitory and cannot sustain this
11 cause of action. Id.

**G.     Conclusion**

13 Plaintiffs cannot state a cause of action against opposing counsel for violation of
14 section 10(b) of the of the Securities and Exchange Act, fraudulent misrepresentation,
15 negligent misrepresentation, and third party professional negligence because attorneys do not
16 owe a duty to opposing parties, Plaintiffs were not the intended beneficiaries of Defendants'
17 services, and as a matter of law Ms. Thompson had no right to rely on statements made by
18 opposing counsel. Secondly, Plaintiffs claim for tortious interference fails because there is
19 no liability for interference with a contract where a party gives truthful information to
20 another. These claims all fail as a matter of law and will be dismissed with prejudice as any
21 amendment would be futile. See FED. R. CIV. PRO. 15.

22 Additionally, other than asserting Defendants prosecuted a baseless lawsuit, Plaintiffs
23 do not allege a willful act in furtherance of this purpose, and consequently, Plaintiffs have
24 failed to state a claim for abuse of process. Plaintiffs claim for wrongful institution of civil
25 proceedings is predicated solely on conclusory allegations regarding the alleged absence of
26 probable cause, and therefore, will be dismissed. Furthermore, Plaintiffs fail to adequately
27 plead a physical injury in connection with their claim for negligent infliction of emotional
28 distress. However, because the pleading deficiencies in Plaintiffs' abuse of process,

wrongful institution of civil proceedings, and negligent infliction of emotional distress could possibly be cured on amendment, these claims will be dismissed without prejudice. See FED. R. CIV. PRO. 15.

**IV.     The Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims in the interests of judicial economy, fairness, and comity**.

The one claim remaining in this case, after this Order, is Plaintiff's state-law claim for intentional infliction of emotional distress. The Court exercised jurisdiction over Plaintiff's state-law claims as supplemental to its original jurisdiction over the federal causes of action pursuant to 28 U.S.C. §1367(a). However pursuant to 28 U.S.C. §1367(c), the Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – . . . (3) the district court has dismissed with prejudice all claims over which it has original jurisdiction . . .. 28 U.S.C. §1367(c). By this Order, the Court has dismissed all claims over which it has original jurisdiction.

The Supreme Court has stated, and the Ninth Circuit has often repeated, that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). While discretion to decline to exercise supplemental jurisdiction over state-law claims is triggered by the presence of one of the conditions in section 1367(c), it is, however, "informed by the values of economy, convenience, fairness, and comity." See Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997).

After reviewing the entire record in this matter, this Court has determined that the interests of judicial economy, convenience, fairness, and comity, on balance, favor declining to exercise supplemental jurisdiction over the remaining state-law claims pursuant to this Court's discretion under 28 U.S.C. §1367(c).

**Accordingly,**

**IT IS HEREBY ORDERED** Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. (Dkt. #11). The Motion to Dismiss is granted as to Count

1, violation of section 10(b) of the Securities and Exchange Act; Count 4, Fraudulent Misrepresentation; Count 5, Negligent Misrepresentation; Count 6 Third Party Professional Negligence, and Count 7, Tortious Interference with Contractual Relations, which are dismissed **WITH PREJUDICE**. The Motion to Dismiss is granted as to Count 2, Abuse of Process; Count 3, Wrongful Institution of Civil Proceedings; and Count 9, Negligent Infliction of Emotional Distress, which are dismissed **WITHOUT PREJUDICE**. The Motion to Dismiss is denied as to Count 8, Intentional Infliction of Emotional Distress.

DATED this 5th day of December, 2005.

Mary H. Murgula
United States District Judge