**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pamela Thompson, individually and as guardian of Gabriella Thompson, Matthew Thompson, Marcus Thompson, Michael Thompson; and the Thompson Group, P.C., an Arizona professional corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>George Paul and Karen Paul, husband and wife; Tom Morgan; Scott Dewald and Deborah Jamieson, husband and wife; Lewis and Roca, LLP, An Arizona limited liability partnership; and Capitol Detective Agency, Inc., an Arizona corporation,<br><br>  Defendants. | No. CIV-05-0990-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendants Lewis and Roca, LLP's Motion for Award of Attorneys' Fees and Non-Taxable Expenses (Dkt#60,66) and Plaintiffs' Motion for Leave to File a Motion to Set Aside the Judgment Pursuant to Rule 60(b) (Dkt.#72). After reviewing the papers, and finding oral argument to be unnecessary, the Court issues the following Order.

**I.  Factual Background**

On April 1, 2005, Plaintiffs filed their complaint alleging claims for: (1) violation of section 10(b) of the Securities and Exchange Act; (2) Abuse of Process; (3) Wrongful Institution of Civil Proceedings; (4) Fraudulent Misrepresentation; (5) Negligent Misrepresentation; (6) Third Party Professional Negligence; (7) Tortious Interference with

1  Contractual Relations; (8) Intentional Infliction of Emotional Distress; and (9) Negligent
2  Infliction of Emotional Distress.  Plaintiff's claims were asserted against Lewis and Roca
3  LLP, George Paul, Karen Paul, Tom Morgan, Scott Dewald and Deborah Jamieson (the
4  "L&R Defendants")  (Complaint "Compl." ¶¶6-10)  as well as Capitol Detective Agency.
5  (Id.  at ¶11).    Plaintiff's allegations arose out of the resignation by Plaintiff Pamela
6  Thompson ("Ms. Thompson" or "Plaintiff Thompson"), as Chief Financial Officer, Secretary,
7  and Treasurer of YP.net in May, 2002. (Id.  ¶17).  Plaintiff Thompson's resignation was
8  allegedly motivated by ethical and professional concerns regarding accounting and disclosure
9  practices of YP.net and Angelo Tullo, Chief Executive Officer of YP.net.  Id.    Upon
10 receiving Ms. Thompson's resignation, YP.net, represented by the L&R Defendants, sued
11 Ms. Thompson and Ms. Thompson countersued. (Id. ¶26).  Plaintiffs asserted that the L&R
12 Defendants instituted the baseless litigation to harass Ms. Thompson and to prevent her from
13 disclosing information to law enforcement regarding the criminal investigation of Mr. Tullo.
14 (Id.  ¶¶26-32).   On April 22, 2004, the parties entered settlement negotiations.  (Id. ¶37).
15 Plaintiffs' complaint alleged that Ms. Thompson relied on certain false  statements made by
16 the L&R Defendants when accepting YP.net's settlement offer, comprising of YP.net's
17 Common Stock.  (Id. ¶38).  For instance, an alleged false statement made by the L&R
18 Defendants was that there was no criminal investigation targeted at Mr Tullo.  (Id. ¶37).
19 Plaintiffs asserted that due to the L&R Defendants' conduct and false misrepresentation, Ms.
20 Thompson was unable to sell her YP.net stock before the government indicted Mr. Tullo,
21 and consequently, the value of Ms. Thompson's stock plummeted.  (Id.  ¶¶44,45).
22       On December 5, 2005, the Court issued its order granting in part and denying in part
23 the L&R Defendants' motion to dismiss Plaintiffs' claims. Specifically, the Court ordered
24 that dismissal with prejudice was proper regarding Plaintiff's claims of: (1) violation of
25 Section 10(b) of the Securities and Exchange Act; (2) Fraudulent Misrepresentation; (3)
26 Negligent Misrepresentation; (4) Third Party Professional Negligence; and (5) Tortious
27 Interference with Contractual Relations.  Further, the Court dismissed without prejudice
28 Plaintiff's claims of: (6) Abuse of Process; (7) Wrongful Institution of Legal Proceedings;

- 2 -

1  and (8) Negligent Infliction of Emotional Distress. The Court denied the motion to dismiss
2  regarding Plaintiffs' Intentional Infliction of Emotional Distress claim. Lastly, the Court
3  held that "in the interests of judicial economy, convenience, fairness, and comity, on balance,
4  favor declining to exercise supplemental jurisdiction over the remaining state law claims
5  pursuant to this Court's discretion under 28 U.S.C. § 1367(c)." (Dkt.#33). The Court
6  subsequently denied Plaintiffs' motion for reconsideration on February 6, 2006, finding that
7  it had previously addressed the arguments raised by Plaintiff and that the arguments were
8  again without merit. (Dkt.#48). On March 13, 2006, Plaintiffs filed their Notice of Appeal
9  to the Ninth Circuit of this Court's rulings. (Dkt.#51). On March 20, 2006, final judgment
10 was entered in this case. (Dkt.#54). On April 3, 2006, the L&R Defendants filed their instant
11 Motion for attorneys' fees and non-taxable costs. The L&R Defendants seek $98,052.75 in
12 attorneys' fees and $4,605.09 in non-taxable costs. On December 5, 2006, Plaintiffs filed
13 their instant Motion for leave to file a motion to set aside the judgment. Both motions are
14 fully briefed and ripe for the Court's consideration.

**II.     Plaintiffs' Motion for Leave to File Motion to Set Aside the Judgment**

16 Plaintiffs raise three arguments in support of their request for leave to file their
17 proposed Motion to set aside the Court's Judgment in this matter. First, Plaintiffs contend
18 that they have obtained newly discovered evidence that establishes that Defendant Paul made
19 a material misrepresentation to Plaintiff Thompson during settlement discussions on April
20 22, 2004. Second, Plaintiffs assert that they recently discovered that during a period of
21 eighteen (18) months, this Court presided over three different cases all involving Lewis and
22 Roca, Angelo Tullo and Plaintiff Thompson. Plaintiffs assert that they "do not know" if the
23 prior cases "affected this Court's judgment in this case." (Plaintiff's Motion, Dkt.#72, Exhibit
24 A, p.1). Third, Plaintiffs assert that the Court's judgment was procured by fraud and/or
25 should be set aside based upon "any other reason justifying relief" under Rule 60(b)(6),
26 Fed.R.Civ.P.

27 As a preliminary matter, it is important to note that this Court's jurisdiction over
28 Plaintiffs' Motion is limited in light of Plaintiffs' appeal pending before the Ninth Circuit

1 Court of Appeals. As stated by the Ninth Circuit "[t]o seek Rule 60(b) relief during the
2 pendency of an appeal, 'the proper procedure is to ask the district court whether it wishes to
3 entertain the motion, or to grant it, and then move [the appellate court], if appropriate, for
4 remand of the case.'" Williams v. Woodford, 384 F.3d 567, 586 (9th Cir. 2004). As such, the
5 only issue before the Court is whether, based upon the arguments presented by Plaintiffs, the
6 Court is inclined to entertain or grant Plaintiffs' Rule 60(b) motion. The Court is not so
7 inclined for several reasons.

8 First, with respect to Plaintiffs' reliance on fraud or newly discovered evidence it does
9 not appear that the Plaintiffs have presented these issues within a "reasonable time" based
10 upon the papers presented. Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981)(motion
11 filed pursuant to Rule 60(b)(1), (2) & (3) "must be brought within a 'reasonable time' and in
12 any event not longer than one year afer the judgment was entered." ); see also Butz v.
13 Mendoza-Powers, 474 F.3d 1193, 1195 (9th Cir. Feb.1, 2007). Plaintiffs' papers indicate that
14 they became aware of the alleged new evidence regarding the settlement agreement between
15 Angelo Tullo and New Horizon Capital occurring in December of 2003, at the latest, June
16 6, 2006. (Plaintiffs' Reply, Dkt.#74, p.4). However, Plaintiffs did not file the instant Motion
17 to set aside the judgment until December 5, 2006, the one-year anniversary of the Court's
18 signed order dismissing Plaintiffs' claims upon Defendants' motion to dismiss. As such,
19 approximately six months expired prior to any action before this Court with respect to this
20 newly discovered evidence or evidence suggesting fraud. Plaintiffs offer no persuasive
21 argument justifying the delay; rather Plaintiffs assert only that they complied with the one
22 year deadline. However, Plaintiffs ignore that a Rule 60(b)(2) or (3) motion must be filed
23 within a "reasonable time" period, not simply filed within one year of the Court's judgment.
24 See Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1996) ("the one year period
25 represents an extreme limit, and the motion will be rejected as untimely if not made within
26 a 'reasonable time,' even though the one year period has not expired.") (citing Wright &
27 Miller, Federal Practice and Procedure, Civil § 2866). Plaintiffs failure to articulate any
28 reason for the near six-month delay based upon this newly discovered evidence or evidence

- 4 -

1 supporting the existence of fraud is detrimental to Plaintiffs' request to set aside the Court's
2 judgment now.

3       Second, it is not apparent that the new evidence cited by Plaintiff is in fact "newly
4 discovered evidence" contemplated by Rule 60(b)(2).  Notably, Plaintiffs asserted in their
5 Complaint the existence of the settlement between Angelo Tullo and New Horizon Capital
6 ("NHC") (Compl.¶39(e)).  As such, it is apparent that Plaintiffs were aware of the settlement
7 agreement between Mr. Tullo and NHC prior to this lawsuit being filed.  The fact that
8 Plaintiffs rely on the NHC settlement agreement now to further support their argument
9 opposing the Court's order does not somehow make the agreement newly discovered
10 evidence.  Moreover, even if the NHC settlement agreement demonstrates that the
11 representation made to Plaintiff Thompson by the L&R Defendants during settlement
12 negotiations was false, the Court does not see the significance suggesting a different result,
13 as the Court presumed such to be true in the context of the L&R Defendants' original motion
14 to dismiss pursuant to Rule 12(b)(6). Rather, it appears to the Court that Plaintiffs again seek
15 another bite at the apple in support of their argument regarding the L&R Defendants alleged
16 false statements made during settlement discussions with Plaintiff Thompson, an adverse
17 party and unintended beneficiary.  See Linder v. Brown & Herrick, 943 P.2d 758, 766
18 (Ariz.App. 1997). The Court addressed this argument in its December 5, 2005, and February
19 13, 2006, orders. (Dkt.#33,48).

20       Third, to the extent Plaintiffs rely on their "discovery" that this Court presided over
21 previous litigation involving the Parties involved in this litigation, the Court finds this
22 argument provides no basis to set aside the judgment.  For instance, Plaintiffs cite that the
23 Court presided over the Stocklemon.com litigation, CV04-0035-PHX-MHM, filed on
24 January 8, 2004, which involved Lewis and Roca representing Plaintiff YP.net and an
25 allegedly defamatory reference in the complaint to Plaintiff Thompson.  In addition, this
26 Court presides over the criminal proceedings against Mr. Tullo; CR04-0539-PHX-MHM.
27 Plaintiffs assert that "it is questionable if this Court should have even accepted the
28 assignment of th[e] case" in light of these other cases. (Plaintiff's Motion, Dkt.#72, p.4).

- 5 -

1  This broad reference provides nothing to suggest that the Court should consider setting aside
2  the Judgment based upon the Court's handling of the other litigation involving some the
3  Parties, nor does the Court find any issue as to the propriety of the Court's handling of such
4  matters.

5  Fourth, the Court finds that Plaintiffs do not advance any persuasive argument
6  suggesting the existence of fraud tainting the Court's judgment. In re M/V Peacock on
7  Complaint of Edwards, 809 F.2d 1403, 1404-05 (9th Cir. 1987)("moving party [under Rule
8  60(b)(3)] must establish that a judgment was obtained by fraud, misrepresentation, or
9  misconduct, and that the conduct complained of prevented the moving party from fully and
10 fairly presenting the case." ).  No such circumstances have been suggested here, especially
11 in light of the fact that the Court previously deemed as true Plaintiffs' allegation regarding
12 the false representations by the L&R Defendants during settlement discussions, which
13 Plaintiffs claim the newly discovered or concealed evidence supports.

14 Lastly, to the extent Plaintiffs rely on Rule 60(b)(6) in support of setting aside the
15 judgment, the Court finds no basis to do so.  Notably, other than citing this Rule, the
16 Plaintiffs offer no argument in support of such a determination. Ackerman v. United States,
17 340 U.S. 193, 199 (1950) (noting relief under Rule 60(b)(6) to be available only in
18 "extraordinary circumstances.").

19 As such, because Plaintiffs offer no persuasive argument suggesting it is appropriate
20 to grant leave to file its Motion to set aside the Court's judgment under Rules 60(b)(2), (3)
21 or (6), the Court will deny Plaintiffs' request for leave.

22 **III.    L&R Defendants' Motion for Attorneys' Fees and Non-Taxable Costs**

23 The L&R Defendants offer two arguments in support of their request to recover their
24 attorneys' fees totaling $98,052.75 and non-taxable costs of $4,605.09 against Plaintiffs.
25 First, they assert that the settlement agreement entered into between Plaintiff Thompson and
26 YP.net provides for such a recovery.  Second, they contend that A.R.S. §§ 12-341 and 12-
27 341.01 authorize such a recovery.
28

- 6 -

**A.     Settlement Agreement Between Plaintiff Thompson and non-Party YP.Net.**

As noted in the factual background discussion, above, Plaintiffs' claims are based, in part, upon false statements of fact made by the L&R Defendants, as counsel for YP.net, to Plaintiff Thompson during settlement negotiations. Plaintiffs asserted several claims based upon these false statements including securities violation, fraudulent misrepresentation, negligent misrepresentation and third-party professional negligence. As previously addressed, the Court dismissed those claims, upon Rule 12(b)(6) review finding that the L&R Defendants had no duty to Plaintiffs as unintended beneficiaries. (Dkt.#33). In light of the Court's ruling, the L&R Defendants assert that they are entitled to their attorneys' fees in this matter because of specific language agreed to in the underlying settlement agreement between YP.Net and Plaintiff Thompson finalized on May 21, 2004. Specifically, the agreement provides in pertinent part:

> <u>Attorney's Fees.</u>  If either party brings an action to enforce the terms of this Agreement or to declare rights hereunder, the prevailing party, as determined by the court, in any such action, on trial or appeal, shall be entitled to its reasonable attorneys' fees and costs to be paid by the losing party, as determined by the court.

(Lewis and Roca Motion, Dkt.#66, Exhibit F, p.6).

The L&R Defendants assert that the attorney fee provision of this settlement agreement applies because Plaintiffs' claims are based upon Plaintiff Thompson's rights under the agreement. They contend this argument is supported by Plaintiffs' allegations regarding an inflated value of the stock she received under the terms of the settlement agreement because of Defendants' false and misleading statements. (Compl. ¶¶37-45). On the other hand, Plaintiffs oppose any notion that their action constitutes an action to enforce the terms of the settlement agreement with YP.net or to declare their rights thereunder. Rather, Plaintiffs contend that their claims are solely tortious in nature and are independent of the settlement agreement with YP.net.

In reviewing the L&R Defendants' reliance on this provision of the settlement agreement between Plaintiff Thompson and YP.net, the Court finds this provision does not contractually obligate Plaintiffs to bear the L&R Defendants' attorneys' fees. First, there is

- 7 -

1  no basis to suggest that Plaintiffs' lawsuit against the L&R Defendants constitutes "an action
2  to enforce the terms of [the] [a]greement." Nor do the L&R Defendants even attempt to
3  make this argument as Plaintiffs' lawsuit against the L&R Defendants does not bear on any
4  type of enforcement of the terms of settlement agreement Plaintiff Thompson and non-party
5  YP.net. Second, contrary to the L&R Defendants' argument, Plaintiffs' lawsuit against them
6  does not consist or constitute an action to "declare [Plaintiffs] rights" under the settlement
7  agreement. Notably, Plaintiffs' lawsuit does not seek any type of declaratory ruling from the
8  Court suggesting that the settlement agreement is valid or invalid. Rather, Plaintiffs assert
9  multiple tort claims against the L&R Defendants regarding their conduct during the course
10 of settlement proceedings and outside the scope of such as well, such as tortious interference
11 with Plaintiff Thompson's contracts with third-parties (Compl.¶¶87-94) and harassment of
12 Plaintiff Thompson and her children. (Compl. ¶¶95-122).  As such, the Court finds that the
13 provision of the settlement agreement between Plaintiff Thompson and YP.net, upon which
14 the L&R Defendants rely does not contractually obligate Plaintiffs to bear the L&R
15 Defendants' attorneys' fees.

**B.     Arizona Statutory Attorneys' Fees: A.R.S. § 12-341.01**

17 The L&R Defendants also assert that they are statutorily entitled to their attorneys'
18 fees pursuant to A.R.S. § 12-341 and 12-341.01. A.R.S. § 12-341.01(A) provides that "[i]n
19 any contested action arising out of a contract, expressed or implied, the court may award the
20 successful party reasonable attorney fees."  As such, the L&R Defendants assert, as the
21 "successful party" that because Plaintiffs' claims "aris[e] out of" the settlement agreement
22 between Plaintiff Thompson and YP.net, that they are entitled to their reasonable attorneys'
23 fees.  In support of this argument, the L&R Defendants argue that although Plaintiffs'
24 asserted claims sound in tort, these claims clearly arise out of the settlement agreement and
25 are therefore recoverable.  The L&R Defendants cite certain allegations of Plaintiffs'
26 Complaint asserting that the Plaintiff Thompson was fraudulently induced into entering into
27 the settlement agreement. For example, Plaintiffs' Complaint alleged multiple times that the
28 L&R Defendants made false representations as to: (1) the lack of existence of any criminal

1 investigation targeted at the CEO of YP.net, Angelo Tullo; and (2) that the final settlement
2 documents would be executed on April 26, 2004. (Compl. ¶¶37, 67, 75). Moreover,
3 Plaintiffs' Complaint asserted that Plaintiff Thompson "was induced into accepting a
4 settlement agreement in the YP litigation comprised of nothing more than YP.NET's
5 Common Stock." (Id. ¶38; see also ¶¶51, 69, 76). In reviewing these allegations and the
6 nature of Plaintiffs' claims, the L&R Defendants assert that they are entitled to their fees
7 because "[b]ut for th[e] Agreement, there would be no lawsuit, as plaintiffs' claims are based
8 on the alleged denial of Ms. Thompson's rights, benefits and underlying assumptions of that
9 Agreement and the alleged fraudulent inducement of the settlement." (Dkt.#66, p.5).

10 Conversely, Plaintiffs firmly dispute the application of A.R.S. § 12.341.01 to this
11 lawsuit. Rather, Plaintiffs assert that this action "is based upon a series of separate and
12 independent torts..." (Plaintiff's Response, Dkt.#67, p.6). In support, Plaintiffs offer an
13 analogy of an unwarranted request for attorney's fees by a successful consumer plaintiff who
14 purchases a movie ticket and because of the negligence of the movie theater owner suffers
15 injury when the building burns to the ground. As with this case, Plaintiffs argue that
16 statutory attorney's fees would not be available to plaintiff's counsel simply based upon the
17 existence of a contract, *i.e.*, the movie ticket. (Id.).

18 The Court finds that Plaintiffs are not entitled to their reasonable attorneys' fees under
19 the statutory authority of A.R.S. § 12-341.01(A), as the claims at issue do not "aris[e] out of"
20 a contract, but rather sound exclusively in tort. A brief review of Arizona law distinguishing
21 between contract and tort claims is helpful to the Court's inquiry. For instance, in Sparks
22 v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 647 P.2d 1127 (1982), the Arizona Supreme
23 Court concluded that a prevailing party could recover attorneys' fees for both breach of
24 contract and bad faith claims "based upon facts which show a breach of contract, the breach
25 of which may also constitute a tort." Id. at 543-44. The Arizona Supreme Court went to
26 explain that "[t]he fact that the two legal theories are intertwined does not preclude recovery
27 of attorney's fees under § 12-341.01(A) as long as the cause of action in tort could not exist
28 but for the breach of contract." Id. Notably, in Sparks, the Arizona Supreme Court, while

- 9 -

1  finding an award of attorney's fees based upon the intertwined tort claim of bad faith claim
2  to be appropriate, held that the prevailing plaintiff could not recover attorney's fees based
3  upon the misrepresentation claim as it "sound[ed] mainly in tort and its existence d[id] not
4  depend upon a breach of the contract of insurance." Id. at 544.  In Marcus v. Fox, 150 Ariz.
5  333, 723 P.2d 682 (1986) the Arizona Supreme Court further noted that in determining
6  whether a claim arises out of a contract, an "actual" breach of the relevant contract may not
7  be required, rather attorneys' fees may also be recoverable in situations where "a contract is
8  entered into and later found void due to a claim of fraudulent inducement." Id. at 335.  The
9  Arizona Supreme Court further clarified its position, in Morris v. Achen Const. Co., Inc., 155
10 Ariz. 512, 747 P.2d 1211 (in banc) by noting that "the mere existence of a contract
11 somewhere in the transaction" does not make an award of attorney's fees appropriate.  Id. at
12 514.  The court went on to hold that a claim for attorney's fees based upon the plaintiff's
13 claim of fraudulent inducement to enter into a contract with a third-party did not arise out of
14 a contract because the "duty not to commit fraud ... exists ... even when there is no
15 contractual relationship between the parties at all." Id.   Thus, as stated by the court in
16 Ramsey Air Meds, LLC v. Cutter Aviation, Inc., 198 Ariz. 10, 6 P.3d 315 (Ariz. App. 2000),
17 in light of the above Arizona Supreme Court authority, "a tort claim 'will arise out of a
18 contract' only when the tort could not exist 'but for' the breach or avoidance of contract." Id.
19 at 15.  As such, "[w]hen the duty breached is one implied by law based on the relationship
20 of the parties, that claim sounds fundamentally in tort, not contract."  Id.

21       In light of this authority, the Court finds that the L&R Defendants are not entitled to
22 their attorneys' fees because the Plaintiffs' claims arise not of the breach or avoidance of a
23 contract, but rather arise out of the alleged relationship between the Parties implied by law.
24 This determination is bolstered by a plain review of the fraud and misrepresentation claims
25 asserted by Plaintiffs, such as: (1) violation of section 10(b) of the Securities and Exchange
26 Act; (2) Fraudulent misrepresentation; (3) Negligent misrepresentation; and (4) Third-party
27 professional negligence.  These claims arise out of the L&R Defendants' conduct in allegedly
28 failing to disclose certain information, such as the ongoing criminal investigation against

1  YP.net's CEO, Mr. Tullo, to Plaintiff Thompson, in violation of their legal obligation to do
2  so. This alleged obligation did not arise out of the a contract, but was based upon the
3  relationship of the parties. The Court, in its order granting the L&R Defendants' motion to
4  dismiss, rejected any such legal duty to Plaintiff Thompson as she stood as only a non-client
5  unintended beneficiary in relation to the L&R Defendants. (Dkt#33, pp.3-4). Notably, the
6  Court's determination did not turn on the existence of a contract. Moreover, Plaintiffs did
7  not seek to invalidate or enforce any provision of the settlement agreement at issue. Thus,
8  Plaintiffs' claims turned on the existence or lack of a relationship between Plaintiffs and the
9  L&R Defendants and not on the "breach or avoidance of a contract." Ramsey, 198 Ariz at
10 15.
11     The L&R Defendants' theory in support of attorneys' fees is somewhat similar to that
12 advanced by the successful defendant in Morris 155 Ariz. 512. Specifically, in Morris, the
13 defendant, as the successful party, sought to recover its attorneys' fees in an action brought
14 by a party claiming that it was fraudulently induced by the defendant into entering a contract
15 with a third party. As noted above, the Arizona Supreme Court rejected the defendant's
16 request for attorneys' fees on the basis that the defendant's obligation not to commit fraud
17 existed apart from any contractual relationship and held that the action amounted only to "an
18 action for damages for fraud where the alleged fraud is claimed to have resulted in one party
19 entering into a contract with a third party." Id. at 514. The same can be said here as the L&R
20 Defendants contend they are entitled to their fees because of Plaintiffs' general allegations
21 suggesting that Plaintiffs were fraudulently induced into entering the settlement agreement
22 with YP.net, a non-party to this litigation, by the false statements and actions of the L&R
23 Defendants. This argument fails as the alleged obligation to provide such information arises
24 not out of any contract, but out of a legal obligation, which the Court has found does not
25 exist. (Dkt.#33). Therefore, because Plaintiffs' fraud and misrepresentation claims do not
26 "aris[e] out of" contract, but sound exclusively in tort, the L&R Defendants are not statutorily
27 entitled to their attorneys' fees on such claims. Moreover, it is clear that the L&R Defendants
28 are not entitled to their attorneys' fees on any of the remaining unsuccessful claims asserted

1  by Plaintiffs of: (1) Abuse of process; (2) Wrongful institution of legal proceedings; (3)
2  Tortious interference with contractual relations; and (4) Negligent infliction of emotional
3  distress. These claims relate to the L&R Defendants alleged tortious conduct based on their
4  actions and omissions in the use of the judicial process, tortious interference with Plaintiff
5  Thompson's other contractual relationships and harassment of Plaintiff Thompson and her
6  children. These claims do not depend on the "breach or avoidance of a contract." Ramsey,
7  198 Ariz at 15. As such, the Court finds that the L&R Defendants are not entitled to their
8  attorneys' fees and non-taxable costs.

**IV.    Summary**

Plaintiffs offer no compelling or persuasive argument suggesting it is appropriate to grant them leave to file a motion to set aside the Court's judgment pursuant to Rule 60(b) Fed.R.Civ.P. As such, the Court will deny Plaintiffs' request. Moreover, because Plaintiffs' claims do not "aris[e] out of" a contract, the Court will deny the L&R Defendants' Motion for attorneys' fees amounting to $98,052.75 and non-taxable costs of $4,605.09.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Lewis and Roca, LLP's Motion for Award of Attorneys' Fees and Non-Taxable Expenses (Dkt#60,66).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Leave to File a Motion to Set Aside the Judgment Pursuant to Rule 60(b) (Dkt.#72).

DATED this 29th day of March, 2007.

_____
Mary H. Murguia
United States District Judge