**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PAMELA THOMPSON, an individual,)
and as guardian of GABRIELLA)
THOMPSON, MATTHEW THOMPSON,)
MARCUS THOMPSON, MICHAEL)
THOMPSON, and THE THOMPSON)
GROUP, P.C., an Arizona professional)
corporation,                    )
                                )
            Plaintiffs,         )
                                )
vs.                             )
                                )
George Paul and Karen Paul, husband and)
wife; Tom Morgan, an individual; Scott)
Dewald and Deborah Jamieson, husband)
and wife; LEWIS AND ROCA LLP, an)
Arizona Limited Liability Partnership;)
CAPITOL DETECTIVE AGENCY, INC.,)
an Arizona corporation; DOES 1 through)
100, inclusive,                 )
                                )
            Defendants.         )
_____)

No. CV 05-990-PHX-MHM

**ORDER**

Currently before the Court is Defendant Capitol Detective Agency, Inc.'s Motion to Dismiss (Dkt. #104), and Defendants Lewis and Roca LLP, George Paul, Tom Morgan, and Scott Dewald's (and their respective spouses) Motion to Dismiss (Dkt. #105). Also before the Court are Plaintiffs' Motion for Reconsideration (Dkt. #118) and Motion for Leave to File a Second Amended Complaint (Dkt. # 119). After reviewing the pleadings and hearing oral argument on May 20, 2009, the Court issues the following order.

# I.    FACTUAL BACKGROUND[1]

From January 2001 through May 2002, Plaintiff Pamela Thompson ("Thompson") worked as the Chief Financial Officer, Secretary, and Treasurer of YP.Net, Inc. (intermittently referred to as "YP"), a publicly traded company.  (First Amended Complaint ("FAC") ¶¶ 12, 19 (Dkt. #92)).  In or around April 2002, Defendant George Paul ("Paul"), an attorney from the Arizona law firm Lewis and Roca LLP ("L&R"), who represented YP.Net and Angelo Tullo ("Tullo"), the Chief Executive Officer of YP.Net, told Thompson that "we have been having you followed," and he "showed [Thompson] and two other witnesses a picture of her parked car."  (FAC ¶¶ 18, 91).  The L&R attorneys had hired Defendant Capitol Detective Agency, Inc. ("CDA") to follow Thompson and her children.  (FAC ¶ 94).  Thompson then resigned from YP.Net in May 2002 "because of questionable accounting and auditing practices at the company.  More specifically, . . . because of the refusal of YP.Net, its officers and directors, and its professionals to make proper disclosures to the Securities and Exchange Commission." (Id.).  "When Thompson resigned from YP, she forwarded her resignation from YP to the SEC Enforcement Division because of her concerns about the conduct at YP."  (FAC ¶ 13).

YP.Net immediately filed a civil suit against Thompson in an attempt to protect Tullo, who was then subject to criminal investigation by several federal agencies.  (FAC ¶¶ 14, 23).  In particular, the lawsuit allegedly "was initiated against Thompson as a form of harassment to keep her from cooperating with [American Business Funding Corp. ("ABF")] in adversary proceeding . . . in Bankruptcy Court, to keep her from cooperating with the defendants in the sham litigation that Tullo filed against ABF's officers and

---

[1]When presented with a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court must assume all of the allegations in the complaint are true.  See, e.g., Wyler Summit Partnership v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998) ("[A]ll well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the nonmoving party.").  As such, the factual background is taken from the allegations in Plaintiffs' complaint.

directors (a total of sixteen separate lawsuits), and to keep [her] from cooperating with federal and state law enforcement officials." (FAC ¶ 21). Thompson filed counterclaims in September 2003. (Id.).

In or around June 2000, while representing Commercial Finance Services, Inc. ("CFS"), "an alter ego of YP, where YP funds were used to fund CFS ventures," the L&R attorneys became aware "that Tullo was a target of a criminal investigation with several federal law enforcement agencies." (FAC ¶ 16). Tullo's "criminal matters were never disclosed in any Securities and Exchange Commission filings." (FAC ¶ 19). During the pendency of the litigation between Thompson and YP.Net, Defendant Paul "denied any and all knowledge of a criminal investigation including up through April of 2004 when the Lewis and Roca Defendants withdrew from their representation based on their claim that they had a conflict of interest." (FAC ¶ 30).

Between April or May 2002, and February 2004, the L&R attorneys, by and through CDA employees, "stalked and harassed" Thompson and her children. (FAC ¶¶ 90-105). Specifically, on May 28, 2002, Thompson "was physically assaulted at the Phoenix City Grill. . . . [T]he Lewis and Roca Defendants hired these individuals." (FAC ¶ 95). Then, on August 26, 2002, "a man in a white vehicle approached Thompson's daughter on her way home from school and harassed her about her laptop computer," (FAC ¶ 96); in September 2002, "a man sat in a white four-door car in front of Thompson's house for several hours on three separate occasions" (id. ¶ 98); in November 2002, "a man sat in a white four-door car in front of Thompson's house for several hours" (id. ¶ 99); in December 2002, "a man sat in a blue SUV in front of Thompson's house for several hours" (id. ¶ 100).

On April 26, 2003, Randy Papetti, an L&R attorney, allegedly confirmed that the L&R attorneys were having Thompson and her children followed. (FAC ¶ 92). Also, in September 2003, the L&R attorneys allegedly "sent a drunken process server to Thompson's house who assaulted one of her triplet sons by grabbing him." (FAC ¶ 103). And finally, in February 2004, "a man in a blue SUV followed Thompson's children

home from the school bus stop, . . . . attempted to walk around to the back of the house and then came to the front door and banged on it at 9:30 p.m. The man . . . followed the children home from school several times that month and would sit in front of Thompson's house for hours on end." (FAC ¶ 104). Moreover, Plaintiff alleges that Defendant Tom Morgan, an L&R attorney, repeatedly referred to her children as "tar babies" throughout this time period. (FAC ¶ 27).

On April 22, 2004, Thompson and YP.Net "entered into a settlement memorandum" to resolve YP.Net's civil suit against Thompson, whereby Thompson was to receive 255,000 shares of common stock in YP.Net. (Id. ¶¶ 32-33, 39). At that time, Defendant Paul again acknowledged that the L&R attorneys had Thompson followed. (FAC ¶ 93). In addition, Thompson "made it clear to all parties including the Lewis and Roca Defendants that she intended to sell the stock she received in the settlement as soon as possible." (FAC ¶ 35). The settlement was to be executed on April 26, 2004. (FAC ¶ 32).

In part, Thompson entered into the settlement agreement " based upon" the "representations by the Lewis and Roca Defendants" that "[t]here in fact was no criminal investigation targeted at the CEO of YP, Angelo Tullo." (FAC ¶¶ 32, 33, 43, 45). Thompson "had no knowledge of the status of any pending investigation of Tullo or even if there was an investigation of Tullo at that time." (FAC ¶ 32). Yet by April 22, 2004, the L&R attorneys allegedly knew "there was a criminal investigation involving Angelo Tullo" and that "it was foreseeable that if Tullo was indicted the stock price of YP would be affected dramatically." (FAC ¶¶ 34, 42, 44). Thus, the L&R attorneys allegedly made their false representations "with knowledge of their falsity and knowingly omitted or failed to disclose facts needed to cause their representations and communications to be accurate and truthful." (FAC ¶ 44).

"Moments before the final settlement documents in the YP litigation could be executed, the Lewis and Roca Defendants withdrew from the YP litigation due to an undisclosed conflict that they had purportedly just discovered." (FAC ¶ 36). Because of

the last minute withdrawal, "YP had to retain new counsel" and postpone the execution of the settlement. (FAC ¶ 37). "The settlement was ultimately finalized on May 24, 2004," (Id.).

"[T]hree days later, on May 27, 2004, Tullo was indicted on 29 counts of fraud, conspiracy, money laundering, and orchestrating a ponzi scheme." (FAC ¶ 38). "As a result of Tullo's indictment," the value of YP.Net's common stock that Thompson received under the settlement, which had been "valued at more than one million dollars" at the time of the settlement, "plummeted in value from more than $5.00 per share to less than $1.00 per share." (FAC ¶¶ 39, 43).

## II.     PROCEDURAL HISTORY

On April 1, 2005, Plaintiffs filed a complaint against the law firm of Lewis & Roca LLP, three individual partners in the firm (the "L&R attorneys"), two spouses of those partners (collectively "the L&R Defendants"), and the Capitol Detective Agency ("CDA"), alleging claims for: 1) violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 ("the Section 10(b) claim"); 2) abuse of process; 3) wrongful institution of civil proceedings; 4) fraudulent misrepresentation; 5) negligent misrepresentation; 6) third party professional negligence; 7) tortious interference with contractual relations; 8) intentional infliction of emotional distress ("IIED"); and 9) negligent infliction of emotional distress ("NIED") (collectively "the state law claims"). (Compl. ¶¶ 46-131 (Dkt. #1)). Defendant CDA was named only in Counts Eight (IIED) and Nine (NIED).

On June 6, 2005, the L&R Defendants moved to dismiss all of the claims in Plaintiffs' complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). (Dkt. #11). The Court granted in part and denied in part the L&R Defendants' Motion to Dismiss on December 5, 2005. (Dkt. #33). The Court dismissed with prejudice Plaintiffs' Section 10(b) claim and related state law claims for fraudulent and negligent misrepresentation, and third party professional negligence, as well as the claim for tortious interference with contractual relations; any amendment would have been futile. (Id., pp. 10-11). The Court

dismissed without prejudice Plaintiffs' state law claims for abuse of process, wrongful institution of civil proceedings, and NIED. (Id., p.11). In addition, although the Court determined that Plaintiffs adequately pled their IIED claim, the Court declined to exercise supplemental jurisdiction over that one remaining state law claim pursuant to 28 U.S.C. § 1367(c). (Id., p.10).

On December 7, 2005, Defendant Capitol Detective Agency filed a Motion for Clarification, noting that the Court incorrectly stated that CDA had not joined in the L&R Defendants' Motion to Dismiss,[2] and asking that the Court clarify that CDA was also entitled to the relief granted to the L&R Defendants, or in the alternative to dismiss Plaintiffs' state law IIED and NIED claims for lack of subject matter jurisdiction. (Dkt. #34). The Court granted CDA's Motion for Clarification on February 1, 2006, dismissing without prejudice Plaintiffs' NIED claim against CDA, and declining to exercise supplemental jurisdiction over Plaintiffs' IIED claim, the sole remaining state law claim. (Dkt. #34).

On December 19, 2005, Plaintiffs moved the Court to reconsider its December 5, 2005 dismissal of Plaintiffs' claims arising out of the alleged fraudulent statements made by the L&R Defendants, and to certify a question of state law to the Arizona Supreme Court pursuant to A.R.S. § 12-1861. (Dkt. #35). However, as the request for certification was untimely, and the motion lacked merit and only asked the Court to rethink what it had already thought, the Court denied the motion. (Dkt. #48).

On March 13, 2006, Plaintiffs filed a Notice of Appeal of the December 5, 2005 and February 13, 2006 orders. (Dkt. #51). Plaintiffs raised two issues on appeal, "relevant only to possible liability of the L&R defendants": "First, Thompson contends

_____

[2]In its December 6, 2005 order, the Court inaccurately stated that Defendant Capitol Detective Agency ("CDA") did not join in the L&R Defendants' Motion to Dismiss. (Dkt. #33, p.1 n.1). As stated in the Court's February 1, 2006 order, the Court overlooked CDA's joinder in the L&R Defendants' Motion to Dismiss as CDA waited until October 21, 2005, the day after oral argument had been presented on the L&R Defendants' Motion, to file their joinder. (Dkt. #26).

that the district court erred in dismissing her claim under Section 10(b) because it incorrectly relied on state rather than federal law.  Second, Thompson contends that the district court erred in denying her request to certify the question of state law." Thompson v. Paul, 547 F.3d 1055, 1058 (9th Cir. 2008).

On October 27, 2008, the Ninth Circuit reversed and remanded in part, and affirmed in part, this Court's December 5, 2005, and February 13, 2006 orders.  Id. at 1065.  The Ninth Circuit noted that "the district court was not well served by the attorneys who appeared before it"; "by erroneously framing the question of attorney liability under Section 10(b) as one basically controlled by state law and then failing to cite the federal cases on point, the parties invited the district court to engage in [ ] state law analysis."  Id. at 1060.  Nonetheless, the Ninth Circuit reversed the dismissal of Plaintiffs' Section 10(b) claim, holding that "Thompson's complaint states a claim upon which relief can be granted under Section 10(b)," and that Plaintiffs' complaint satisfies the heightened pleading requirements of the PSLRA.  Id. at 1063, 1065.  The Ninth Circuit then affirmed the denial of Plaintiffs' motion to reconsider and to certify a question of state law to the Arizona Supreme Court.  Id. at 1065.

After receiving the Ninth Circuit mandate, the Court held a telephonic status hearing with the parties on December 8, 2008.  (Dkt. #86).  The Court directed counsel to meet and confer both prior to and subsequent to the filing of any amended complaint.  (Id.).  And on January 5, 2009, Plaintiffs filed a First Amended Complaint, reasserting every claim in their original complaint, save NIED.  (FAC ¶¶ 40-116).  Plaintiffs also reasserted their IIED claim against the Capitol Detective Agency.  (FAC ¶¶ 89-116).  The Court then held a Rule 16 Case Management Conference on February 9, 2009, and advised counsel that discovery would commence at that time on Plaintiffs' Section 10(b) claim.  (Dkt. #99).  The Court issued its Scheduling Order on February 12, 2009.  (Dkt. #102).

On February 13, 2009, the L&R Defendants moved to dismiss Plaintiffs' First Amended Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6).  (Dkt. #105).

Defendant CDA also moved to dismiss Plaintiffs' IIED claim against them at that time. (Dkt. #104).

On March 23, 2009, Plaintiffs responded to Defendants' respective Motions to Dismiss, and also moved the Court for leave to file a second amended complaint (Dkt. #119), and to reconsider the Court's December 5, 2005 order to dismiss with prejudice Plaintiffs' claims for fraudulent misrepresentation (Count 4) and negligent misrepresentation (Count 5). (Dkt. #118). Plaintiffs, through their proposed second amended complaint seek to, among other things, dismiss their claims of third party professional negligence (Count 6) and tortious interference with contractual relations and business expectancy (Count 7). (Dkt. #s 92, 120).

### III.   MOTION FOR RECONSIDERATION[3]

Pursuant to LRCiv 7.2(g), Plaintiffs move the Court for relief from its previous order dismissing Plaintiffs' claims of fraudulent and negligent misrepresentation against the L&R Defendants. (Dkt. #118). Plaintiffs contend that their motion is appropriate because a recent decision by the Arizona Court of Appeals – Chalpin v. Snyder, 2008 WL 4659438 (Ariz. App. Div. 1 2008) – constitutes a "showing of new facts or legal authority that could not have brought to [the Court's] attention earlier with reasonable diligence." LRCiv. 7.2(g)(1). Defendants label Plaintiffs motion as "bizarre" and argue that any reconsideration is foreclosed by "the principle of *res judicata*, which bars parties from reasserting claims that are dismissed with prejudice and not appealed." (Dkt. #127, p.8; Dkt. #126, pp. 5-6). Plaintiffs reply that "Defendants' invocation of [ ] post-judgment

_____

[3]LRCiv. 7.2(g)(2) provides, in pertinent part, that "no motion for reconsideration may be granted unless the Court provides an opportunity for response." Although the Court did not direct the L&R Defendants to file a response to Plaintiffs' Motion for Reconsideration pursuant to LRCiv. 7.2(g)(2), it will consider the motion as the L&R Defendants have substantively responded to the motion for reconsideration in both their Reply in Support of the Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. #126, pp. 4-6) and their Response to Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. #127, p.8).

rules and doctrines as *res judicata* and Federal Rule of Civil Procedure 60(b) are, however, misplaced. . . . the applicable rule is that of law of the case." (Dkt. #135, p.11) (emphasis in original).

Motions for relief from judgments or orders (commonly referred to as "reconsideration") are authorized by Fed.R.Civ.P. 60(b) and LRCiv 7.2(g). The Court's December 5, 2005 order constitutes a judgment on the merits as to those issues not raised or reversed on appeal. See Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"). Plaintiffs did not appeal their claims of fraudulent and negligent misrepresentation. Thompson, 547 F.3d at 1058. As such, Plaintiffs' "Motion for Reconsideration" is necessarily brought pursuant to Rule 60(b), presumably subsection (b)(6): "On a motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6).[4]

The doctrine of res judicata does not bar Plaintiffs' motion for relief under Fed.R.Civ.P. 60(b)(6). Res judicata provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Moitie, 452 U.S. at 398 (citations omitted). However, res judicata applies only when there is a second action; it does not apply to continuing proceedings in the same litigation. In re Freeman, 489 F.3d 966, 968 n.1 (9th Cir. 2007). Although this case is on remand and the Court's December 5, 2005 order constitutes a judgment on the merits on those issues not appealed, this case involves a single

---

[4]Fed.R.Civ.P. 60(b)(5) is inapplicable: (1) "changes in the law are insufficient to trigger Rule 60(b)(5), as the 'relation between the present judgment and the prior judgment must . . . be closer than that of a later case relying on the precedent of an earlier case'"; (2) "[b]ecause [Plaintiffs] failed to preserve their challenges to the adverse judgments, they could not subsequently move for relief under Rule 60(b)(5)." California Medical Ass'n v. Shalala, 207 F.3d 575, 578 (9th Cir. 2000) (quoting Tomlin v. McDaniel, 865 F.2d 209, 211 (9th Cir. 1989))

continuing lawsuit, not separate, parallel lawsuits.  Thus, as this case is proceeding on remand in the same case, the doctrine of res judicata does not apply.  See Arizona v. California, 460 U.S. 605, 619 (1983) ("It is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment.").

The Court's decision to depart from its prior judgment is governed by the "law of the case" doctrine.[5]  See Mizuho Corp. Bank (USA) v. Cory & Associates, Inc., 341 F.3d 644, 653 (7th Cir. 2003) ("Within a particular suit, the correct doctrine to consider is law of the case."); Hull v. Freeman, 991 F.2d 86, 90 (3rd Cir. 1993) ("Relitigation of issues previously determined in the same litigation is controlled by principles of the law of the case doctrine rather than collateral estoppel."); Pyramid Lake Paiute Tribe of Indians v. Hodel, 882 F.2d 364, 369 n.5 (9th Cir. 1989) ("Under the [law of the case] doctrine, . . . a trial court has discretion to reconsider its prior, non-final decisions.").  "[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  Arizona, 460 U.S. at 618; Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 250 (D.C. Cir. 1987) ("Under the law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."); Miller, 822 F.2d at 832 ("The rule is that the mandate of an appeals court precludes the district court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal.").  "But a court may have discretion to depart from the law of the case if:

---

[5]"The difference between the law of the case and res judicata is that 'one directs discretion, the other supersedes it and compels judgment.'"  United States v. Miller, 822 F.2d 828, 832 (9th Cir. 1987) (quoting Southern Railway Company v. Clift, 260 U.S. 316, 319 (1922)).

> 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result."

[U.S. v.] Alexander, 106 F.3d [874,] 876 [(9th Cir. 1997)]." U.S. v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998); see Arizona, 460 U.S. at 619 ("Under the law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice.") (citing White v. Murtha, 377 F.2d 428, 431-32 (5th Cir. 1967) (a court must follow the "law of the case" in all subsequent proceedings in the same case "unless . . . controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice")).[6]

Plaintiffs request that the Court depart from the law of the case, i.e., vacate the Court's December 5, 2005 order dismissing with prejudice Plaintiffs' claims of fraudulent and negligent misrepresentation, because Chalpin represents "a significant change in the law." (Dkt. #135, p.12). Specifically, Plaintiffs challenge the Court's citation to Linder v. Brown & Herrick, 189 Ariz. 398, 406 (Ariz. Ct. App. 1997) for the proposition that "[a] cause of action against opposing counsel for statements made during litigation is

---

[6]The Court is aware of the apparent conflict between the standards for departing from the law of the case doctrine and for granting relief under Fed.R.Civ.P. 60(b)(6). Compare Cuddy, 147 F.3d 1114 ("[A] court may have discretion to depart from the law of the case if: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; . . .") with Agostini v. Felton, 521 U.S. 203, 239 ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6) . . ."); McKnight v. U.S. Steel Corp., 726 F.2d 333, 337 (7th Cir. 1984) ("Plaintiff may not, however, use Rule 60(b) to correct alleged errors of law by the district court which may have been raised by filing a timely appeal from the court's dismissal of plaintiff's complaint."). The later applies more forcefully to actions in which judgment has been fully entered and the case closed, less on remand. Cf. 18B Wright, Miller, & Cooper, Federal Practice and Procedure § 4478.6 (2009) ("The trial court should take account of the needs of orderly progression through the trial and appeals processes in deciding whether to reconsider its own pre-appeal ruling, but so long as further proceedings are otherwise appropriate on remand there is no point in pretending that the trial court owes fealty to a nonexistent appellate ruling.").

strictly limited to actions alleging malicious prosecution, also known as wrongful institution of civil proceedings." (Dkt. #33, p.3). Plaintiffs' argue that that holding is no longer valid in light of <u>Chalpin</u>, in which the Arizona Court of Appeals "expressly adopted" the Restatement (Third) of the Law Governing Lawyers § 56. (Dkt. #135, p.12).

In <u>Chaplin</u>, the Arizona Court of Appeals held that "aiding and abetting is a valid cause of action against lawyers," citing with approval the general rule expressed in Section 56 of the Restatement that "a lawyer is subject to liability to a client or nonclient when a nonlawyer would be in similar circumstances." 2008 WL 4659438, at *11. The Court of Appeals also noted that "[t]he Arizona Supreme Court has adopted the general rule set forth in the Restatement . . . that 'lawyers have no special privilege against civil suit.'" <u>Id.</u> (<u>Safeway Ins. Co. v. Guerrero</u>, 210 Ariz. 5, 10 (Ariz. 2005)). The Court then reaffirmed that its holding was not foreclosed by <u>Linder</u> and other prior cases, because the "policy" referred to in <u>Linder</u> "concerning attorney immunity from liability 'was premised upon the absolute privilege from defamation afforded participants in judicial proceedings.'" <u>Id.</u> (quoting <u>Giles v. Hill Lewis Marce</u>, 195 Ariz. 358, 361 (Ariz. Ct. App. 1999)).

<u>Chalpin</u> does not constitute an intervening change in law. For starters, both <u>Chalpin</u> and <u>Linder</u> are decisions by the Arizona Court of Appeals. In addition, the Arizona Supreme Court recently cited <u>Linder</u> with approval for the proposition that "[a] party to a lawsuit generally may not premise a fraud claim on alleged misrepresentations by adverse counsel." <u>Guerrero</u>, 210 Ariz. at 14 (citing <u>Linder</u>, 189 Ariz. at 405). Further, in <u>Linder</u>, the Arizona Court of Appeals simply recognized that under Arizona law "an attorney's conduct during the course of judicial proceedings is absolutely privileged." 189 Ariz. at 406. Thus, the Court of Appeals affirmed the trial court's dismissal of the"claim of fraud against an opposing attorney for statements made during litigation." <u>Id.</u> The <u>Chalpin</u> court did not attempt to overrule <u>Linder</u>; at most, it clarified that <u>Linder</u> was limited to the litigation-defamation context.

Nonetheless, in light of, among others, <u>Guerrero</u>, <u>Chalpin</u>, and <u>Green Acres Trust v. London</u>, 141 Ariz. 609 (Ariz. 1984) (outlining the litigation-defamation privilege), the Court's decision that <u>Linder</u> completely bars claims for fraudulent misrepresentation was clearly erroneous. There is no question that causes of action other than malicious prosecution, such as abuse of process, aiding and abetting, and intentional interference, may be brought against opposing counsel. <u>See, e.g.</u>, <u>Guerrero</u>, 210 Ariz. at 10 ("[L]awyers have no special privilege against civil suit."); <u>Chalpin</u>, 2008 WL 4659438, at *11 ("Under the general rule, 'a lawyer is subject to liability to a client or nonclient when a nonlawyer would be in similar circumstances.'") (quoting Restatement (Lawyers) § 56). In addition, it is clear, that causes of action based on alleged misrepresentations by adverse counsel are generally prohibited by the litigation-defamation privilege. <u>Guerrero</u>, 210 Ariz. at 14. Thus, fraud claims premised on alleged defamation by opposing counsel are barred; fraud claims arising outside of the defamation context are not necessarily barred. To the extent that the Court's December 5, 2005 order held otherwise, the Court's decision was erroneous.

This conclusion is bolstered by the fact that "comment f" to Section 56 of the Restatement (Third) of Law Governing Lawyers, while implicitly recognizing the litigation-defamation privilege (lawyers "are not liable for such conduct as using legally innocuous hyperbole or proper argument in negotiations . . . or presenting an argument to a tribunal in litigation"), states that "lawyers are civilly liable to clients and nonclients for fraudulent misrepresentation." And as discussed above, both the Arizona Supreme Court and Court of Appeals have recently cited Restatement § 56 with approval. <u>Guerrero</u>, 210 Ariz. at 14; <u>Chalpin</u>, 2008 WL 4659438, at *11). "Misrepresentation is not part of proper legal assistance," Restatement (Lawyers) § 56, and the litigation-defamation privilege does not constitute a complete bar to claims of fraudulent misrepresentation against opposing counsel; the privilege extends only to *defamatory* statements made during the course of judicial proceedings (and extra-judicial statements that bear "some relation to the proceeding). <u>See</u> <u>Green Acres</u>, 141 Ariz. at 613 ("In various settings, Arizona courts

have applied the absolute privilege *to defame* in connection with judicial proceedings.") (emphasis added).

"As an immunity which focuses on the status of the actor, the [litigation-defamation] privilege immunizes an attorney for statements made while performing his function as such." Id. (internal quotation marks and citation omitted). Here, Plaintiffs allege that the L&R attorneys induced Thompson to enter into a settlement agreement in which she was to receive only shares of YP.Net stock by affirmatively misrepresenting that there were no pending criminal investigations or proceedings against the CEO of YP.Net. Such alleged misrepresentation can not be said to be made by the L&R Defendants while performing their function as attorneys; affirmative misrepresentation is not a part of proper representation. In addition, "by denying the absolute privilege in this case, [the Court would] not curtail zealous representation." Green Acres, 141 Ariz. at 615. Thus, as the Court is convinced that its previous decision to lump all fraud claims against attorneys within the litigation-defamation privilege is incorrect, the Court will exercise its discretion to depart from the law of the case at this time to hold otherwise[7];

---

[7]The Court declines, on the other hand, to depart from the law of the case with respect to its dismissal of Plaintiffs' claim for negligent misrepresentation. The Court's decision in that regard was based on the fact that although a negligent misrepresentation claim may exist "where the 3rd party suffers loss 'through reliance upon [the misrepresentation],'" (Dkt. #16, p.8), "[a]n attorney's duty to a nonclient arises only if the nonclient is an 'intended beneficiary' of the attorney's services. Wetherill v. Basham, 3 P.3d 1118, 1128 (Ariz. Ct. App. 2000). '[A]n adverse party is not an intended beneficiary of the adverse counsel's client.' Lewis v. Swenson, 617 P.2d 69, 72 (Ariz. Ct. App. 1980) (internal quotation omitted)." (Dkt. #33, p.3); see Restatement (Lawyers) § 56, comment f ("A lawyer is liable for negligent misrepresentation to a nonclient in the course of representing a client only when the lawyer owes the nonclient a duty of care."). Plaintiffs do not argue in their Motion for Reconsideration that any intervening change in the law has occurred on this issue, and they cite nothing to convince the Court that its previous decision or reliance on the above cases was erroneous.

- 14 -

1    Plaintiffs are not foreclosed from asserting their claim for fraudulent misrepresentation

2    against the L&R Defendants.[8]

3    **IV.    LEGAL STANDARD – RULE 12(b)(6) MOTION**

4           "The motion to dismiss for failure to state a claim is viewed with disfavor and is

5    rarely granted." Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir.

6    1997).  To survive a motion to dismiss for failure to state a claim, the plaintiff must allege

7    facts sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v.

8    Twombly, 550 U.S. 544, 555 (2007); see also Morley v. Walker, 175 F.3d 756, 759 (9th

9    Cir. 1999) ("A dismissal for failure to state a claim is appropriate only where it appears,

10   beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief.").

11          In addition, "all well-pleaded allegations of material fact are taken as true and

12   construed in a light most favorable to the nonmoving party." Wyler Summit Partnership

13   v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998).  But "the court [is not]

14   required to accept as true allegations that are merely conclusory, unwarranted deductions

15   of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979,

16   988 (9th Cir. 2001).  Likewise, "a formulaic recitation of the elements of a cause of action

17   will not do." Twombly, 550 U.S. at 555.

18   / / /

19   _____

20          [8]The Court notes that it also previously cited Linder for the proposition that "as a
     matter of law and common sense, [Ms. Thompson] had no right to rely on statements made
21   by the attorneys opposing [her]."  (Dkt. #33, pp. 3-4).  In addition, the Court notes that
     "[r]eliance is justified [only] when it is reasonable, but is not justified when knowledge to
22   the contrary exists." Carondelet Health Servs. V. Ariz. Health Care Cost Containment Sys.
     Admin., 187 Ariz. 467, 470 (Ariz. Ct. App. 1996).  However, on reconsideration, and
23   because the Court must accept Plaintiffs' allegations as true on a motion to dismiss, the
     question of whether Thompson did in fact have a "justifiable right to rely" on the L&R
24   Defendants' alleged misrepresentations or whether she must be estopped from asserting
     reliance based on knowledge to the contrary, is a question of fact better left for consideration
25   on a motion for summary judgment. See, e.g., De La Cruz v. Tormey, 582 F.2d 45, 48 (9th
     Cir. 1978) ("The issue is not whether a plaintiff's success on the merits is likely but rather
26   whether the claimant is entitled to proceed beyond the threshold in attempting to establish
27   [her] claims.").

28

# V.    DISCUSSION

## A.    Defendant Capitol Detective Agency

Plaintiffs' FAC asserts only one claim against Defendant Capitol Detective Agency ("CDA"), intentional infliction of emotional distress ("IIED").  On February 13, 2009, CDA filed a Motion to Dismiss the IIED claim for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).  (Dkt. #104).  CDA contends that the IIED claim is barred by the statute of limitations,[9] and in the alternative Plaintiffs fail to state a claim for IIED because they do not allege "an ongoing series of events" or "extreme and outrageous conduct" on the part of CDA.  (Dkt. #s 104, 131).  Plaintiffs respond that their IIED claim is not time barred because it relates back to the original complaint under Fed.R.Civ.P. 15(c), and it is sufficiently pled because the FAC establishes that "Defendant Capital [sic] Detective Agency engaged in an ongoing pattern of harassment and stalking,").  (Dkt. #s 116, p.3; 117).

First, CDA does not argue until its Reply that Plaintiffs fail to plead a *prima facie* case of IIED.  That is inappropriate.  <u>See, e.g.</u>, <u>Coos County v. Kempthorne</u>, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).  Furtherore, the Court's December 5, 2005 order already addressed this issue:

> Plaintiff[s'] claims are distinguishable from an isolated incident of videotaping.  Furthermore, Arizona does not require proof of relentless physical and verbal harassment to state a claim for intentional infliction of emotional distress.  Here, Plaintiff[s] allege[ ] Defendants repeatedly followed and "stalked" Ms. Thompson and [her] children, used a racial slur in reference to Ms. Thompson's children, trespassed on Ms. Thompson's

---

[9]A.R.S. § 12-502, "the minority tolling statute," provides that limitations periods for all actions and claims of minors are tolled until the minor reaches the age of majority.  <u>See</u>, <u>Porter v. Triad of Arizona (L.P.)</u>, 203 Ariz. 230 (Ariz. Ct. App. 2002).  As such, Defendant CDA's statute of limitations argument applies only to Plaintiff Thompson's IIED claim, not her minor children's claims.  The Court declines at this time to address the issue raised by the L&R Defendants in a footnote regarding whether Plaintiff Thompson's assertion of her minor children's claims during their period of minority terminates the tolling period under A.R.S. § 12-502.  (Dkt. #106, pp 5-6, n. 2).

property, terrorized Ms. Thompson's children, and hired individuals to assault Ms. Thompson. The Court finds that reasonable minds could differ about whether the alleged conduct is sufficiently outrageous, and therefore, dismissal is not appropriate.

(Dkt. #33, p.8); Dkt. #45, p.3 ("Because[ ] Capitol joined in the Lewis & Roca's Motion to Dismiss, Plaintiff[s'] claim of intentional infliction of emotional distress adequately states a claim against both Lewis & Roca and Capitol."). And as CDS notes in its motion to dismiss, the FAC and original complaint are substantively identical with respect to the IIED claim (Dkt. #104); the Court thus need not revisit the issue of whether IIED is adequately pled.[10] As such, the Court will now turn to whether the claim is barred by the statute of limitations.

A.R.S. § 12-542 prescribes a two-year limitations period for personal injury claims. "Arizona courts have concluded that the two-year limitations period found in A.R.S. § 12-542 applies to IIED claims." St. George v. Home Depot U.S.A., Inc., 2007 WL 604925, at *6 (D. Ariz. 2007) (citing Hansen v. Stoll, 130 Ariz. 454, 460 (Ariz. Ct. App. 1981); Orr v. Bank of America, 285 F.3d 764, 780-81 (9th Cir. 2002)). Plaintiffs' IIED claim is based on alleged conduct ranging from April or May of 2002 to February 2004. (FAC ¶¶ 91, 95-96, 98-100, 103-04).[11] As such, the statute of limitations began to

---

[10]In any event, Plaintiffs allege that employees of Defendant CDA assaulted, stalked, and harassed Plaintiff and her children. (FAC ¶¶ 90-106). However, CDA contends that "[n]one of th[e] conduct [alleged] should be considered to be extreme or outrageous in nature." (Dkt. #131, p.5). But as the Court concluded in its December 5, 2005 order, "reasonable minds could differ about whether the alleged conduct is sufficiently outrageous." (Dkt. #33, p.8).

[11]Despite Defendant CDA's contention to the contrary, the May 28, 2002 alleged assault on Plaintiff Thompson is not "the only allegation of any conduct by any Defendant directed at Pamela Thompson." (Dkt. #104, p.3). A number of the allegations of stalking and harassment by CDA employees between 2002 and 2004 apply to both Thompson and her children. (FAC ¶¶ 98-100, 104). Those allegations in fact do constitute an "ongoing series of events." Dkt. #33, p.8 ("Plaintiff's claims are distinguishable from an isolated incident . . .").

run in February 2004.[12]  And Plaintiffs filed their original complaint on April 1, 2005.

(Dkt. #1).  Therefore, Plaintiffs' IIED claim was timely filed as of the original complaint.

The Court, however, after granting in part Defendants' Motion to Dismiss, declined to exercise supplemental jurisdiction over Plaintiffs' state law IIED claim pursuant to 28 U.S.C. § 1367(c), and dismissed the claim without prejudice.  (Dkt. #33, p.10; Dkt. #45, p.3).  Final judgment in this case was entered on March 14, 2006.  (Dkt. #54).

Pursuant to 28 U.S.C. § 1367(d), the statute of limitations for a claim asserted under the Court's supplemental jurisdiction is tolled only "while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."  Arizona law provides for such a period: under certain circumstances,"the plaintiff . . . may commence a new action for the same cause after the expiration of the time so limited and within *six months* after such termination."  A.R.S. § 12-504 (emphasis added).

Although Plaintiffs timely appealed the Court's orders, Plaintiffs raised only the Court's dismissal of the Section 10(b) claim and denial of the request to certify a question of state law to the Arizona Supreme Court.  Thompson, 547 F.3d at 1058 ("Thompson raises two questions on appeal.  These questions are relevant only to possible liability of the L&R defendants.  No question relevant to the liability of defendant Capitol Detective Agency is before us on appeal.").  And issues not raised on appeal are waived.  See, e.g., Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.  We will not manufacture

---

[12]Defendant CDA does not specifically contend that an IIED claim is not a continuing tort.  Compare Floyd v. Donahue, 186 Ariz. 409, 414 (Ariz. Ct. App. 1996) ("[U]nder certain conditions a tort is continuous, and in such cases the limitations period does not commence until the date of the last tortious act.") with St. George, 2007 WL 604925, at *6 n.8 ("No Arizona appellate court to date has directly addressed whether an IIED claim is a continuing tort and, if so, what effect such tort would have on conduct occurring outside the two-year limitations period.").

arguments for an appellant, and a bare assertion does not preserve a claim.") (internal citation omitted); <u>McMillan v. United States</u>, 112 F.3d 1040, 1047 (9th Cir. 1997). The appeal, therefore, did not toll the limitations period for Plaintiffs' state law IIED claim.[13] Therefore, under A.R.S. § 12-504 Plaintiffs had until October 14, 2006, six months after the date of the final judgment, within which to file their IIED claim in state court. Plaintiffs did not do so, and the limitations period has thus expired on Thompson's IIED claim.

Nevertheless, Plaintiffs argue that Rule 15(c) "permits the [ IIED claim] . . . to relate back to the April 1, 2005 [complaint] for purposes of any A.R.S. § 12-542 calculation relating to the applicable statute of limitations." (Dkt. #117, p.4). But Rule 15(c) merely provides that "[a]n amended to a pleading relates back to the date of the original pleading when: . . . (B) the amended pleading asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" That rule is inapposite here. A plaintiff cannot amend a complaint to add a claim that has already been raised in the original complaint. Plaintiffs are seeking to *reurge* their state law IIED claim, not amend an existing complaint to state a new claim arising out of the conduct, transaction, or occurrence set out in the original

---

[13]The Court's February 1, 2006 order dismissing Plaintiffs' state law IIED claim without prejudice was final and appealable. <u>See</u> <u>California Dept. of Water Resources v. Powerex Corp.</u>, 533 F.3d 1087, 1096 (9th Cir. 2008) (holding that a district court's discretionary decision to decline supplemental jurisdiction and remand must be challenged pursuant to appeal); <u>Amazon, Inc. v. Dirt Camp, Inc.</u>, 273 F.3d 1271, 1275 (10th Cir. 2001). ("[T]he district court declined to exercise supplemental jurisdiction over the state law claims . . . so that Amazon might re-file them in state court. The district court dismissed the entire action, effectively excluding Amazon's suit from federal court. Therefore, the dismissal, although without prejudice, was final and appealable under controlling precedent.") (citation omitted); <u>but see</u> <u>Aviall Services, Inc. v. Cooper Industries, LLC</u>, 572 F.Supp.2d 676, 702 (N.D. Tex. 2008) ("Although Aviall could have appealed the dismissal of the state-law claims, it could also have sought-as it did-to overturn the dismissal of the federal-law claims and then sought reinstatement of the state-law claims, which had been dismissed without prejudice.").

complaint. See Raspberry v. Garcia, 448 F.3d 1150, 1154-55 (9th Cir. 2006) (amended habeas petitions cannot relate back to prior habeas petitions where the initial petition was dismissed).

Furthermore, Fed.R.Civ.P. 15(c) may not be used to circumvent 28 U.S.C. § 1367(d). Nor may it be used to excuse Plaintiffs' failure to raise on appeal the Court's decision to decline supplemental jurisdiction over the state law IIED claim. See generally O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1066 (9th Cir. 2006) ("[D]ismissal of the original suit, even though labeled as without prejudice, nevertheless may sound the death knell for the plaintiff's underlying cause of action if the sheer passage of time precludes the prosecution of a new action."); see also American States Ins. Co. v. Dastar Corp., 318 F.3d 881, 887 (9th Cir. 2003) ("[W]hen the parties do not toll the limitations period, a 'plaintiff assumes the risk [that] by the time the case returns to district court, the claim will be barred by the statute of limitations or laches.'") (quoting James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1066 (9th Cir. 2002)).[14] Had the Ninth Circuit intended that the Court on remand reconsider whether to exercise supplemental jurisdiction over Plaintiffs' state law IIED claim, the Ninth Circuit could have stated as much and reinstated the claim. See, e.g., Chappell v. McCargar, 152 Fed.Appx. 571, 572 (9th Cir. 2005) ("The district court dismissed the federal causes of action for failure to state a claim and declined to exercise supplemental jurisdiction over the state claims. We reverse and reinstate Chappell's federal claims. In addition, we order the district court to

---

[14]Despite Plaintiffs' contention, Juras v. Aman Collection Service, Inc. 829 F.2d 739 (9th Cir. 1987), does not stand for the proposition that "state law claims dismissed without prejudice can, and should, be revived upon a remand from the Court of Appeals." (Dkt. #135, pp. 2-3). Plaintiff is correct that in Juras, the Ninth Circuit held that "[o]n remand, the district court should reconsider exercising pendent jurisdiction over the state law claims." 829 F.2d at 745. In Juras, however, the plaintiff appealed the district court's refusal to exercise pendent jurisdiction over his state law claims. Id. at 740. Here, Plaintiffs did not appeal the Court's dismissal of Plaintiffs' state law claims; the Ninth Circuit confirmed as much on appeal. See Thompson, 547 F.3d at 1058 ("Thompson raises two questions on appeal. . . . No question relevant to the liability of defendant Capitol Detective Agency is before us on appeal.").

reconsider the question of supplemental jurisdiction over the state law claims in light of the reinstatement of the federal claims."); <u>Fredenburg v. Contra Costa County Dept. of Health Services</u>, 172 F.3d 1176, 1183 (9th Cir. 1999). The Ninth Circuit expressly noted that Plaintiffs appealed only the Section 10(b) claim and denial of certification, and that "[n]o issue affecting defendant Capitol Agency was appealed." Accordingly, the Court grants Defendant CDA's Motion to Dismiss Plaintiff Thompson's state law IIED claim as barred by the statute of limitations.[15]

**B.    The Lewis and Roca LLP Defendants' Motion to Dismiss**

On February 13, 2009, the L&R Defendants' filed a motion to dismiss in part Plaintiffs' First Amended Complaint. (Dkt. #105). Specifically, the L&R Defendants ask the Court to (1) dismiss counts four through seven (fraudulent misrepresentation, negligent misrepresentation, third party professional negligence, and tortious interference with contractual relations and business expectancy); (2) dismiss with prejudice count

---

[15]This reasoning applies equally to Plaintiff Thompson's IIED claim against the L&R Defendants. It also applies to Plaintiffs' claims for abuse of process (count two) and wrongful institution of civil proceedings (count three); they are similarly barred by the statute of limitations. The Court previously dismissed without prejudice Plaintiffs' claims for abuse of process and malicious prosecution for failure to state a claim. (Dkt. #33, pp. 4-6, 11). Final judgment was entered on March 20, 2006. (Dkt. #54). Plaintiffs did not appeal the dismissal of these claims; only the Section 10(b) claim and the Court's refusal to certify a question to the Arizona Supreme Court. <u>See</u> <u>Thompson</u>, 547 F.3d at 1058. The statute of limitations for these claims (two years for abuse of process per A.R.S. § 12-542; one year for malicious prosecution per A.R.S. § 12-541) were tolled only while the claims were pending and for six months after they were dismissed. 28 U.S.C. § 1367(d); A.R.S. § 12-504. Plaintiffs did not refile their claims in state court or reassert them in this Court until they filed their First Amended Complaint on January 5, 2009. (Dkt. #92). Thus, Plaintiffs claims for abuse of process and malicious prosecution are barred by their respective statutes of limitations. <u>See, e.g.</u>, <u>Castillo v. McFadden</u>, 370 F.3d 882, 886 n. 2 (9th Cir. 2004) (noting that issues not raised on appeal are deemed waived); <u>Barnett v. U.S. Air., Inc.</u>, 228 F.3d 1105, 1110 n. 1 (9th Cir. 2000) (en banc) (noting that issues not raised in a party's opening brief are waived); <u>Gardner v. Stager</u>, 103 F.3d 886, 887 n. 2 (9th Cir. 1996) ("Issues not raised on appeal are considered abandoned."); <u>but see</u> <u>Availl</u>, 572 F.Supp.2d at 702 (permitting the plaintiff to reinstate his unappealed state law claims after the court of appeals reversed and remanded the district court's dismissal of the plaintiff's federal law claims, as the state law claims were "inextricably intertwined" with the dismissal of the federal claims).

eight (IIED) as asserted by Plaintiff Thompson and decline to exercise supplemental

jurisdiction over count eight as asserted by Plaintiff Thompson's minor children; (3)

dismiss with prejudice counts two (abuse of process) and three (wrongful institution of

civil proceedings); (4) dismiss with prejudice Plaintiffs' new Section 10(b) allegations;

(5) dismiss count one (Section 10(b) claim) against the individual L&R Defendants and

their respective spouses.  (Id., p.2).

        In Response, Plaintiffs state that they "have elected to withdraw" counts six (third

party professional negligence) and seven (tortious interference with contractual relations

and business expectancy) (Dkt. #116, p.2); "Plaintiffs are no longer asserting these

claims."  (Id., p.3).  In addition, as discussed above, the Court grants in part Plaintiffs'

Motion for Reconsideration and Plaintiffs may proceed on count four (fraudulent

misrepresentation), but not count five (negligent misrepresentation) against the L&R

Defendants.  Further, for the reasons discussed above in connection with Defendant

Capitol Detective Agency's Motion to Dismiss, the Court will dismiss count eight (IIED)

as asserted by Plaintiff Thompson against the L&R Defendants, as well as counts two

(abuse of process) and three (malicious prosecution) against the L&R Defendants; those

claims are barred by their respective statutes of limitations.  The Court must now turn to

the L&R Defendants' Motion to Dismiss counts one through three, count eight as asserted

by Plaintiff Thompson's minor children, and the request for expenses in connection with

the instant motion.

                    i. IIED & Supplemental Jurisdiction

        The L&R Defendants, joined by Defendant CDA (Dkt. # 131, p.2), ask the Court

to decline supplemental jurisdiction over Plaintiff Thompson's minor children's state law

IIED claim.  (Dkt.#106, p.5).  The L&R Defendants argue that "there can be no

supplemental jurisdiction" because "[n]ot only is there no overlap of *facts* between the

two claims, there is also no overlap of *parties*"; "the minor children's emotional distress

claim (Count 8) is based on ***completely unrelated facts***" from "Thompson's federal

securities claim . . . based on alleged misrepresentations made to [Thompson] about

whether a criminal investigation was pending against Tullo." (Id.) (emphasis in original). The Court disagrees.

28 U.S.C. § 1367(a) provides, in pertinent part, that "district courts shall have supplemental jurisdiction over [state law] claims that are so related to [federal claims] that they form part of the same case or controversy under Article III of the United States Constitution." See In re Pegasus Gold Corp., 394 F.3d 1189, 1195 (9th Cir. 2005). In other words, "[n]onfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." Trs. of the Constr. Indus. & Laborers Health & Welfare v. Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003) (internal quotation marks omitted). In addition, "[s]upplemental jurisdiction extends over state claims brought against a party even when that party was not subject to the federal claim primarily at issue." In re Davis, 177 B.R. 907, 912 (BAP 9th Cir. 1995).

Two claims remain aside from Plaintiff Thompson's minor children's state law IIED claim – Plaintiff Thompson's Section 10(b) claim (count one) and fraudulent misrepresentation claim (count four). Those claims are based on allegations that the L&R Defendants intentionally misrepresented to Plaintiff Thompson, during the YP.Net settlement negotiations and throughout the YP.Net litigation, that a criminal investigation was not pending against Angelo Tullo, the CEO of YP.Net. (FAC ¶¶ 40-46, 60-65). The misrepresentations were allegedly made by the L&R Defendants to entice Thompson to "act upon these false representations by entering into a signed settlement memorandum with YP." (FAC ¶ 63). Plaintiff Thompson's abuse of process, malicious prosecution, and IIED state law claims, which are now barred by their respective statutes of limitations, also relate to Defendants' alleged conduct during the YP.Net litigation. The minor children's state law IIED claim likewise arises out of Defendants' alleged conduct during the YP.Net litigation. That alleged conduct provides a common nucleus of operative fact encompassing both the state and federal claims. Further, Plaintiffs would

- 23 -

most likely ordinarily be expected to try their claims, including the minor children's IIED claim, in one judicial proceeding.

In addition, it does not appear that the L&R Defendants argued in the previous motion to dismiss that the Court should decline to exercise supplemental jurisdiction over Plaintiff Thompson and her minor children's IIED claim; that motion was based on failure to state a claim. (Dkt. #s 11, 20). In its order granting in part the motion, the Court only declined to exercise supplemental jurisdiction because the Court had dismissed all of Plaintiffs' claims over which it had original jurisdiction. (Dkt. #33, p.10). In any event, this case was filed on April 1, 2005. The Court is now quite familiar with the parties, their counsel, and the causes of action asserted in the original and amended complaint. A return to state court at this time on the remaining IIED claim would appear to be a waste of judicial resources. See Brady v. Brown, 51 F.3d 810 816 (9th Cir. 1995) ("The district court thus could consider whether a return to state court would have been a waste of judicial resources when the case had been in federal court for some time. The district court decided to retain the state claims based in part on the efforts already expended by counsel."). Accordingly, the Court denies Defendants' request and will exercise supplemental jurisdiction over Plaintiff Thompson's minor children's state law IIED claim.[16]

ii. Section 10(b) claims

The L&R Defendants move to dismiss two new allegations raised by Plaintiffs in their First Amended Complaint. These allegations allege that on January 5, 2004, the L&R Defendants prepared a fraudulent press release entitled "New Horizon Capital Drops all Claims Against YP.Net's CEO; Angelo Tullo Exonerated" (FAC ¶¶ 11, 14), and prepared fraudulent SEC filings that "fail[ed] to disclose that Tullo was the target of a criminal investigation" (FAC ¶¶ 19, 20). The L&R Defendants argue, among other

---

[16]To the extent the claims survive summary judgment, the Court will consider at that time a motion to try the IIED claim separately from the Section 10(b) and fraudulent misrepresentation claims.

things, that the new allegations do not satisfy the heightened pleading requirements under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.*, and that the Section 10(b) claims do not state a claim against any of the individual defendants ("the L&R attorneys").[17]  (Dkt. #106, pp. 6-15).  In response, Plaintiffs simply point out that the Ninth Circuit already "upheld the viability of Plaintiffs' 10(b) [claim]."  (Dkt. #116, p.5).

The Ninth Circuit held on appeal that Plaintiffs' original complaint satisfied the PSLRA and stated a claim under Section 10(b).  Thompson, 547 F.3d at 1063 ("Thompson's complaint, pleading a violation of Section 10(b), satisfied the heightened standard of the PSLRA.").  The L&R Defendants now challenge two additional allegations included by Plaintiffs in their First Amended Complaint in support of their Section 10(b) claim and request that they be stricken from Plaintiffs' Complaint.  The Court is unaware, however, of any situation in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged.  Rather, in such situations, the challenge must be brought pursuant to Rule 12(f).  Therefore, the Court will construe the L&R Defendants' Motion to Dismiss the new allegations as a Motion to Strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

Rule 12(f) provides that a party may request that the Court "order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . ."  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  Fantasy, Inc., v. Fogerty, 984 F.2d 1524,

---

[17]The L&R Defendants also argue that the new allegations are time-barred.  (Dkt. #106, pp. 11-12).  The new allegations, however, relate back to the original complaint under Fed.R.Civ.P. 15(c).

1527 (9th Cir. 1993), reversed on other grounds, 510 U.S. 517 (1994) (quoting 5 Charles

A. Wright & Miller, Federal Practice and Procedure § 1382 at 706-07 (1990)).

""Impertinent' matter consists of statements that do not pertain, and are not necessary to the issues in question." Id.

The L&R Defendants challenge two allegations set forth in the First Amended Complaint's general allegation section and plead in connection with the allegations already held by the Ninth Circuit to state a claim and satisfy the PSLRA. See Thompson, 547 F.3d at 1063.[18]  Those allegations concern alleged fraudulent conduct by the L&R Defendants in connection with their representation of YP.Net and Angelo Tullo, the CEO of YP.Net, and specifically in the form of SEC filings and a January 5, 2004 press release. Although specifically connected to the L&R Defendants' alleged misrepresentations during settlement negotiations in the YP.Net litigation, Plaintiffs' Section 10(b) claim also generally concerns the L&R Defendants' alleged fraudulent conduct in connection with their representation of YP.Net and Angelo Tullo.  Thus, the new allegations are potentially relevant to the instant lawsuit – either the Section 10(b) claim or the fraudulent misrepresentation claim – and the Court cannot conclude that the new allegations are

---

[18]Plaintiffs do not assert a new cause of action under Section 10(b) with respect to the newly-raised allegations.  If, however, the allegations *were* asserted as independent Section 10(b) claims, then most likely they would not state a claim under Section 10(b) or satisfy the PSLRA's heightened pleading standards.  See, e.g., 15 U.S.C. 78u-4(b)(1)(B) (complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading"); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2504 (2007) ("The [PSLRA] requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention "to deceive, manipulate, or defraud."); Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 99 (1st Cir. 2007) ("Nowhere does the complaint specify what statements [were false], nor when and in what context such statements were made."); In re Fin. Corp. of Am. S'holder Litig. v. Arthur Andersen & Co., 796 F.2d 1126, 1130 (9th Cir. 1986) (no liability where plaintiffs had not pled "a fraud that touches, or is in connection with, the purchase or sale of a security"); Weiss v. Amkor Tech., Inc., 527 F.Supp.2d 938, 949 (D. Ariz. 2007) ("To infer scienter by virtue of a position in a company would eliminate the necessity for specially pleading scienter.") (internal quotation marks omitted).

"immaterial" and "impertinent" such that they should be stricken from the First Amended Complaint.

The L&R Defendants also move to dismiss Plaintiffs' Section 10(b) claim against Individual Defendants Paul, Morgan, and Dewald, the L&R attorneys named in the Complaint. (Dkt. #106, p.12). The L&R Defendants contend that "[t]he adequacy of the [allegations in complaint] as to the individuals was never at issue" on appeal. (Dkt. #126, p.9). However, while the Ninth Circuit did not specifically state that Plaintiffs' Complaint stated a Section 10(b) claim against the L&R attorneys, the Ninth Circuit collectively referred to both the firm and the named attorneys in holding that "Thompson has alleged sufficient facts in her complaint to survive a Rule 12(b)(6) motion to dismiss her Section 10(b) claim against the L&R *defendants*." Thompson, 547 F.3d at 1058, 1063 (emphasis added). As such, the Court will not construe the Ninth Circuit's order narrowly and will allow Plaintiffs to proceed on their single Section 10(b) claim against the "L&R Defendants," whom the Ninth Circuit and this Court have consistently held to include Lewis & Roca LLP and Individual Defendants Paul, Morgan, and Dewald (despite the fact that "[t]he FAC specifically defines the 'Lewis and Roca Defendants' to be the law firm only, and not the law firm and the individuals defendants" (Dkt. #106, p.12), an apparent mistake which Plaintiffs seek to correct by filing a Second Amended Complaint (Dkt. #120, pp. 3-4)).[19]

## VI. MOTION FOR LEAVE TO AMEND

Plaintiffs move to file a Second Amended Complaint in order "to provide greater specificity in [the] complaint as to [the] Rule 10b-5 claims." (Dkt. #119). Rule 15(a) allows a party to amend his complaint by leave of the court at any time, and such leave

---

[19]There is no indication that Plaintiffs seek to assert independent Section 10(b) claims against any of the Individual Defendants themselves. Although the caption under Plaintiffs' "First Cause of Action" refers to "Violations" of Section 10(b)," Plaintiffs state only that they "have alleged a specific campaign as a single claim under Rule 10b-5." (Dkt. #135, p.7) (emphasis added).

- 27 -

"shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In deciding whether to grant leave to amend, courts "often consider: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." <u>Bonin v. Calderon</u>, 59 F.3d 815, 845 (9th Cir. 1995) (citation omitted); <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 551, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.") (citation omitted). "Prejudice to the opposing party is the most important factor." <u>Jackson v. Bank of Hawaii</u>, 902 F.2d 1385, 1387 (9th Cir. 1990).

Here, the proposed amendments, among other things, eliminate two causes of action and clarify that the "L&R Defendants" refers to Defendant Lewis & Roca LLP and Individual Defendants Paul, Morgan, and Dewald.[20] (Dkt. #120). The amendments also attempt to describe in more detail the alleged involvement of Individual Defendants Paul and Morgan.

The L&R Defendants do not argue that they will suffer prejudice as a result of allowing Plaintiffs to file a Second Amended Complaint, but that the amendment is futile. The Court agrees, but only to the extent, as discussed above, that Plaintiffs seek to reassert their claims for abuse of process, wrongful institution of civil proceedings, negligent misrepresentation, and IIED (with respect to Plaintiff Thompson). However, because the Court holds that Plaintiffs may proceed on their Section 10(b), fraudulent misrepresentation, and the minor children's IIED claim, to the extent the proposed amendments seek only to clarify the allegations concerning those claims, futility is not an issue. Plaintiffs may thus file a Second Amended Complaint to the extent the Complaint is revised consistent with this Order.

/ / /

---

[20]At oral argument, Plaintiffs moved to dismiss Defendant Scott Dewald, which the Court granted. The Court will assume, unless notified otherwise, that Plaintiffs' motion to dismiss applies to both Defendants Scott Dewald *and* Deborah Jamieson, husband and wife.

**Accordingly,**

**IT IS HEREBY ORDERED** granting in part and denying in part Defendant Capitol Detective Agency's Motion to Dismiss. (Dkt. #104). Plaintiff Thompson's state law IIED claim is barred by the statute of limitations. As stated above, however, the Court will exercise supplemental jurisdiction over Plaintiff Thompson's minor children's IIED claims pursuant to 28 U.S.C. § 1367(a). Capitol Detective Agency thus remains a party to this action.

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiffs' Motion for Reconsideration. (Dkt. #118). Plaintiffs may proceed on their claim against the L&R Defendants for fraudulent misrepresentation.

**IT IS FURTHER ORDERED** granting in part and denying in part L&R Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint. (Dkt. #105). Plaintiffs' claims for abuse of process, wrongful institution of civil proceedings, and negligent misrepresentation, as well as Plaintiff Thompson's IIED claim, are dismissed for the reasons stated in the above order. The remaining claims are Plaintiff Thompson's claims for violation of Section 10(b) (count one) and fraudulent misrepresentation (count four) against the L&R Defendants, and Plaintiff Thompson's minor children's claim for IIED (count eight) against the L&R Defendants and Defendant Capitol Detective Agency.

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiffs' Motion for Leave to File a Second Amended Complaint. (Dkt. #119). The Court grants Plaintiffs leave to file a Second Amended Complaint. However, that Complaint must be revised consistent with this Order. In addition, the Complaint may contain no new allegations or causes of action; nothing beyond that already asserted in the lodged Second Amended Complaint. Thus, the Court does not envision the need for Defendants' to file a new Motion to Dismiss with respect to the Second Amended Complaint. Plaintiffs' counsel are directed to meet and confer *in person* with defense counsel prior to filing the revised Second Amended Complaint. The Second Amended Complaint must be filed no

later than July 17, 2009; the parties must also file a joint statement that the Complaint has been revised consistent with this Order.

**IT IS FURTHER ORDERED** reaffirming the deadlines for completion of fact discovery and filing dispositive motions as imposed in the Court's February 12, 2009 Scheduling Order. (Dkt. #102 §§ 4, 7). The parties are directed to meet and confer to determine whether new deadlines for the parties' disclosure of experts and completion of expert discovery need to be imposed in light of the instant order, after which the parties may submit a joint motion for extension; and if the parties cannot come to an agreement, they may state their respective requests in the joint motion. No further extensions will be granted absent extraordinary good cause (and full compliance with the Court's Rules of Practice).

DATED this 27th day of June, 2009.

Mary H. Murguia
United States District Judge